# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

SMITH v. SNYDER

DECEMBER 2d, 1886.

Absent, LACY, J.

1. CONTRACTS—*Alterations—Instructions.*—Where a valid change in a contract is made, the old contract is thereby done away with, and a new one substituted. An instruction to such effect and appropriate to the evidence, is proper.

2. APPELLATE COURT—*Judgments—Conclusiveness.*—Where an instruction given, or a verdict rendered, at trial in court below, are on appeal pronounced erroneous, it is improper at subsequent trial, *the evidence being the same,* to give the same instruction, or to enter up judgment on the same verdict.

3. CONTRACTS—*Breach—Measure of damages—Case at bar.*—The measure of damages for breach of contract to deliver an article at time specified in bill of sale, is the difference between the sale price and the market price at time for delivery. But, where J. sells A. 150 tons of old iron rails to be delivered as a certain party delivers same to him, and J. delivers same as fast as delivered to him, A. has no right to set a time within which J. must complete the delivery, or be deemed guilty of a breach, so as to entitle A. to buy the residue in market, and recover of J. the difference between the market price and the sale price.

Error to judgment of circuit court of city of Richmond, rendered 25th February, 1884, in an action of *assumpsit,* wherein Asa Snyder is plaintiff, and James C. Smith is defendant.

This case is sequel to the case of *Smith* v. *Snyder,* 77 Va. 432, to the syllabus and statement whereof reference is made for the facts.

Opinion states the case.

*Meredith & Cocke,* for the plaintiff in error.

*Guy & Gilliam,* and *Jackson Guy,* for the defendant in error.

FAUNTLEROY, J., delivered the opinion of the court.

This case is at the bar of this court a second time. It was heard and decided April 26th, 1883, and is reported in 77 Va. (2 Hansbrough) 432.

In June, 1880, the defendant in error, Snyder, instituted his action of trespass on the case in the circuit court of the city of Richmond against the plaintiff in error, Smith, alleging the breach of a contract alleged to have been made on the 19th day of September, 1879, for the sale by him to the defendant in error, Snyder, of 150 tons of iron, to the extent of 110 tons, and his consequent damages to the extent of $2,000.

On November 6th, 1880, the cause was called for trial; the plaintiff in error, Smith, pleaded *non assumpsit;* a jury was sworn, the evidence introduced; three instructions were asked for by the defendant in error, Snyder, and four by the plaintiff in error, Smith, and all were refused by the court; and three instructions were given by the court of itself. The case was argued and submitted to the jury, who rendered a verdict for the defendant in error, Snyder, the plaintiff in the suit, for $1,740.79, November 9th, 1880 ; a motion to set aside the verdict, as being contrary to the evidence and the law, was made, and overruled by the court, and judgment was rendered upon the verdict for the plaintiff, Snyder; and two bills of exception

were taken, in which the evidence was certified, and all the instructions, both those offered and refused, and those given, were set out.

A writ of error was granted to the plaintiff in error, Smith; and the case was reviewed in this court in an elaborate and well considered opinion upon the law and the facts of the case, and the verdict was set aside, and the judgment of the circuit court was reversed, and the cause was remanded to the said circuit court for a new trial to be had therein in conformity with the views of this court in said opinion, fully and distinctly expressed, and with directions that if, upon such new trial, the evidence should be substantially the same as upon the former trial, and the defendant, the plaintiff in error, shall again ask for the said first and second instructions which were refused at the former trial, the same shall be given.

The cause was accordingly remanded to the circuit court, and came on there for trial again on the 22d February, 1884, upon the same issue; when a jury was sworn, the evidence introduced, two instructions asked for by the defendant in error, Snyder, were refused, four asked for by the plaintiff in error, Smith, of which the first three were given, and the fourth was refused; and then an instruction was given by the court of itself, which was a modification of the second instruction asked for by the defendant in error, Snyder, and refused by the court; the case was argued and submitted to the jury, who rendered a verdict $1,740.79, with interest thereon from February 9, 1880, in favor of the defendant in error, Snyder, which is exactly the same as the former verdict. A motion to set aside the said verdict upon the ground that it is against the law and evidence of the case, was made and was overruled; and two bills of exceptions were taken, in which all the evidence is certified and all the instructions, both those offered and given, or refused, and that given by the court itself, are set out, except

the second instruction offered by the defendant in error, of which the court's own instruction is a modification. Upon this record and the petition of the plaintiff in error, Smith, the cause is here again.

In the first bill of exception the plaintiff in error complains of the action of the circuit court in refusing to give the fourth instruction asked for by him; and in giving the instruction, which is a modification of the second instruction asked for by the defendant in error. The fourth instruction asked for by the plaintiff in error and refused by the court is as follows: "Further, that if they believe from the evidence that by the original contract an immediate delivery was intended, and that the plaintiff (Snyder), by his letter of October 11th, intended to bind himself, to wait for three weeks from the date of that letter, then he is not entitled to sue on the original contract, and they must find for the defendant."

We think the circuit court erred in refusing to give this instruction. It was warranted both by the facts and the law. Snyder contended that he was entitled to an immediate delivery. It was on that theory he based his claim, and made several imperative demands for delivery before October 11, 1879, when he wrote to Smith: "The party for whom I purchased the 150 tons of old rails will wait *the three weeks* you designated for delivery," &c., &c. In his letter of October 30th, he admits having agreed to postpone the time of delivery. These letters show a binding, irrevocable promise to wait until November 1, 1879, for he wrote "that time will expire on the 1st of November proximo, at which time I shall be ready to receive and pay for them." After Smith received the letter of October 11, 1879, Snyder had so bound himself that he could not have brought suit before that date; and such a binding promise is the making of a new contract and an abrogation of the old one. The record shows that this promise to wait was

entirely voluntary on the part of Snyder; that Smith did not request it, and that Snyder made the suggestion in reply to the letter from Col. Douglas to Smith, of date —— ——, saying that he hoped to be able to deliver the iron in about three weeks; which letter Smith had promptly sent to Snyder as he had done with all the frequent other communications from Col. Douglas touching the delivery of the old rails from the York River railroad. (See the cases of *Stead* v. *Dawber*, 10 Ad. & El. 57; *Ogle* v. *Vane*, 22 B. L. R. 282; *Hickman* v. *Haynes*, 10 Com. Pl. L. R. 598. The decision of this court rendered in this case, upon the first appeal, recognizes the same well-settled rule of law, that where a valid, binding change is made in a contract, the old one is done away with, and a new one is substituted for it.

Judge Richardson, in delivering the opinion of this court, in which the facts of this case are fully and minutely stated, says: "The important question is, What was the contract between the parties? On the part of Snyder the contention is that what occurred on the 20th of September, and terminating with Snyder's note to Smith of that date, amounted to a contract for the sale and delivery by the latter to the former of 150 tons of iron, without any time specified for delivery. On the part of Smith, it is insisted that the understanding acquiesced in by Snyder, was that Smith should deliver the iron to Snyder as he (Smith) received it from the said railroad company. To determine the question thus in dispute, we can look only to the evidence. * * Looking at all the evidence, taking into consideration each and every circumstance, we think that what transpired on the 20th day of September, 1879, did not amount to a contract, in contemplation of law. We are of opinion that the matter was left open, and that either party was at liberty to stand or not, until a few days afterwards, when A. K. Snyder went, as he says, to see Smith as to when he would

make delivery, and that Smith being still willing, the contract was then completed, and that *then* the delivery feature as dependent upon said company's delivery to Smith, as well as the contract in all other particulars, for the first time, became definite and fixed. If this be not the way in which this most irregular proceeding culminated, first in agreement and then in disagreement, the record may be searched in vain for the essential elements of a contract." The question then being for the jury, upon the same state of facts as in the former trial, to find whether the defendant Smith was liable at all under the contract; and if liable, what should be the amount of damages to be given, it was error in the court to refuse to give the instruction No. 4 aforesaid, asked for by the defendant Smith.

But the court, of its own motion, gave the jury the following instruction: "If the jury believe from the evidence that the contract was concluded between the parties, without any knowledge by the plaintiff, that the defendant was dependent for his delivery of the iron, upon delivery thereof to him by the Richmond and York River Railroad Company, and that no definite time for the delivery of the iron was agreed upon between the plaintiff and the defendant in their contract, they are further instructed that the plaintiff had a right to demand the delivery, after reasonable notice of the time when the delivery would be required, and upon default after such notice to the defendant to deliver, the plaintiff had a right to declare the contract broken, and to claim damages to the full extent of the difference between the market price at the time and the price agreed upon in the contract, the jury must determine from all the evidence when the contract was concluded, and whether it was broken by the defendant, and whether a reasonable time for the delivery of the iron had been allowed to the defendant, when the plaintiff elected to declare the contract broken; and if they believe that such had been allowed, they

should find for the plaintiff damages to the full extent of the price then paid by him for the like quantity of similar iron, provided such price did not exceed a fair market price."

This instruction is a virtual repetition of the instruction given by the circuit court on the former trial so far as it refers to, or implicates the important question of the measure of damages; and indeed with some additions and modifications of its language, which do not correct or cure the vice for which it is reprehended in the opinion of this court upon the first appeal, it is word for word the same so far as it defines for the jury the measure of damages. Speaking of this instruction given by the court on the former trial, Judge Richardson says: "In the abstract, this instruction is correct. But it is plainly, in view of the evidence, obnoxious to the objection of ambiguity and calculated to lead the jury away from the proper consideration of the evidence in the cause. It evidently proceeds upon the idea of an original contract without any specified time for delivery, and the consequent right to give reasonable notice of the time when delivery would be required. All of which would be well enough with the consequences incident to a failure to perform after such notice, provided no evidence existed in the case, showing or tending to show, that the contract was different from that supposed in the instruction. That such is the leading thought presented by the instruction, is manifest from the last clause, which assumes that the contract was such as supposed by stating that after such notice and failure to deliver, the party in default would be liable to the other to the full extent of the difference between the market price at the time of such notice, and the contract price. * * * The instruction is evidently predicated upon Snyder's letters of the 11th and 30th of October, 1879, attempting to show that indulgence as to time of delivery, had been extended to Smith upon his request, and that the measure of his liability was

fixed when Snyder notified Smith that the contract was at an end, to wit: On the fifth day of February, 1880. It is sufficient to say, that such a conclusion is unwarranted by the facts. There is not an iota of evidence in the case that Smith ever requested postponement of delivery. On the contrary, he uniformly, from beginning to end, insisted that his delivery was dependent upon the delivery to him by the railroad company." Such was the opinion of this court upon the instruction given by the circuit court upon the former trial in which the evidence was the same as upon this; and which is virtually reiterated upon this trial, notwithstanding the declaration of this court that it was unsupported and unwarranted by an iota of *the evidence in the cause.* But furthermore, the instruction under review is erroneous in telling the jury, or in allowing them to find (as they plainly did predicate their verdict) that for Snyder to be affected by Smith's dependence upon delivery of the iron rails by the railroad company, he must have been told of it before the contract was concluded; that is, that although he was told of it (as the evidence shows he was, and that he recognized it and acted on it, as a condition of the contract itself) in ample time to protect himself from loss, yet he was entitled to wait without being requested so to do upon a rapidly rising market price for the iron, and then to shut down and have damages because of this voluntary waiting.

The instruction instead of telling the jury that if they should find that a *reasonable* time had been allowed to the defendant, Smith, by the plaintiff, Snyder, for the delivery of the iron, when the plaintiff elected to declare the contract broken, they should find for the plaintiff damages to the full extent of the difference between the price of the iron in February, 1880, and at the time of the contract; they should have been instructed that the voluntary waiting of the plaintiff

upon a rapidly rising market price for iron rails, was *unreasonable* and could not affect the defendant, Smith, for the liability for the nearly doubled price of the iron in February, 1880, even had there been an absolute, instead of conditional or provisional contract for delivery, dependent upon the delivery to Smith by the York River railroad company.

The circuit court erred in overruling the motion to set aside the verdict as being contrary to the law and the evidence. This court had said upon the same evidence that there was not an iota of evidence in the case to warrant the instruction of the court, and the assumption of the jury that Snyder's delay was at the request or for the accommodation of Smith; and yet the counsel for Snyder, in their brief in this case, say, "the jury were well warranted from the circumstances of the case (that is identically the same evidence), in believing as they must have, that the delay was at the instance and for the accommodation of Smith, if not at his express request." This court had said that "looking at all the evidence, taking into consideration each and every circumstance, we think that what transpired on the 20th day of September, 1879, did not amount to a contract in contemplation of law," and that, when the contract was completed, a few days after that date, "*the delivery feature, as dependent upon said company's delivery to Smith,* as well as the contract in all other particulars, for the first time, became definite and fixed." The counsel for Snyder say in their brief the verdict of the jury (upon this second trial and upon the same evidence) in effect, says: "We have listened to both sides, and we must say that the fact is, that on the 19th of September, you, Smith, sold Mr. Snyder this iron, and your saying that you sold it to him, subject to your contract with the railroad company, is all a pretense now urged to save you from the consequences of a breach of your contract."

Opinion

This is a correct interpretation of the action of the jury, and an expressive and just paraphrase of their verdict, in this case, put into their mouths by the counsel for Snyder, and the circuit court should have set that verdict aside on the motion of the defendant.

For the foregoing reasons, we are of opinion that the verdict of the jury is contrary to the law and the evidence in the case, and that it must be set aside; that the judgment of the circuit court is wholly erroneous, and must be reversed and annulled, and the cause remanded to the said circuit court for a new trial to be had in conformity with the views herein expressed.

HINTON, J., dissented.

JUDGMENT REVERSED.