# Richmond.

## EASTERN ICE CO. v. KING.

### MAY 2d, 1889.

#### Absent, Richardson, J.

1. SALE—*Construction—Instructions—Case at bar.*—Defendant sold plaintiff a certain quantity of ice of the "best quality harvested in Penobscott river" during five years, unless by reason of the elements it should be impossible to harvest the ice by reasonable effort from the fields controlled by defendant: *held,* the furnishing of an average quality of ice, or "just as it run," was not a compliance with the contract, and instructions to such effect were properly rejected.

2. IDEM—*Breach of warranty—Notice—Rule.*—The true rule is that where goods delivered to buyer are inferior in quality to what was warranted by seller, buyer may sue at once for the breach of the warranty without returning the goods or giving any notice to seller.

3. IDEM—*Measure of damages.*—Where the article has not been returned the measure of damages will be the difference between its value with the defect warranted against and the value it would have borne without defect.

4. APPELLATE PRACTICE—*Two verdicts—Evidence certified—Rule of Decision.*—The opinion of Lewis, P., for the rule of decision in this court under Code 1887, sec. 3484, where there have been two trials and two verdicts, the first being for defendant, which is set aside as contrary to the evidence on the motion of plaintiff, to which defendant excepts, and the evidence (not the facts) is certified; the second being for the plaintiff, upon which judgment is entered, and defendant brings up the case on writ of error.

5. IDEM—*Case at bar.*—From the evidence certified in this case, under sec. 3484 there was no error in the circuit court's setting aside the first verdict or in its refusing to set aside the second verdict and entering judgment thereon.

Error to judgment of circuit court of city of Richmond, rendered June 25, 1887, in an action of trespass on the case, wherein Mrs. Jane King was plaintiff and the Eastern Ice Company, of Bangor, Maine, was defendant. Verdict and judgment at the last trial being for plaintiff, defendant obtained a writ of error and *supersedeas.* Opinion states the case.

*McGuire & Ellett,* for the plaintiff in error.

*Edgar Allan* and *J. Samuel Parrish,* for the defendant in error.

LEWIS, P., delivered the opinion of the court.

This was an action in the circuit court of the city of Richmond, wherein Jane King, the defendant in error here, was plaintiff, and the Eastern Ice Company, a corporation chartered and doing business under the laws of the State of Maine, was defendant. The action was brought to recover damages for an alleged breach of a certain contract, dated June 17, 1886, whereby the defendant company sold to the plaintiff fifteen thousand tons of Penobscot river ice of *the " best quality harvested in Penobscot river?"* during each year of the continuation of the contract, which was to run for five years—three thousand tons to be delivered each year. There was a provision, however, in the contract in these words: " It is further agreed that the said Eastern Ice Company may be released of its obligation of delivering the said ice in the event of destruction of its housed ice by the elements, or if it be impossible to harvest the same by reasonable effort *from the fields controlled by said Eastern Ice Company."*

. The breach alleged in the declaration was that the defendant company, during the year 1886, did not deliver to the plaintiff three thousand tons of ice of the quality stipulated for, but, on the contrary, delivered ice of a very inferior quality, " consisting largely of compressed snow, and very dirty," by reason whereof the plaintiff was greatly damaged, etc.

There were two trials in the court below. At the first trial there was a verdict for the defendant, which, on the motion of the plaintiff, was set aside as being contrary to the evidence, whereupon the defendant excepted. At the second, the jury returned a verdict for the plaintiff for $1,300 damages, upon which judgment was entered, whereupon the defendant obtained a writ of error and *supersedeas.*

.In this posture of the case, we must, in reviewing the alleged errors in the rulings of the court below, look to the proceedings on the first trial, and if there be error in the action of the court in setting aside the verdict rendered for the defendant, it will be our duty to set aside all the subsequent proceedings, and render such judgment as the court below ought to have rendered; that is to say, enter judgment on the verdict for the defendant. *Muse* v. *Stern,* 82 Va., 33; *Jones* v. *Old Dominion Cotton Mills, Id.,* 140; *Tucker* v. *Sandidge,* 85 Va., 546.

An important change, however, in the rule of decision of the appellate court in such cases has been effected by the new Code, which enacts that where, as in the present case, the evidence (not the facts) is certified, the case shall be considered as on a demurrer to the evidence by the party excepting. *Code,* sec. 3484. And this rule, as we have heretofore held, applies to judgments rendered as well before as since the Code took effect. *Sutton* v. *Commonwealth,* 85 Va., 128; *Southwest Va. Improvement Co.* v. *Smith's Adm'r, Id.,* 306. Therefore, instead of looking to the whole evidence at the first trial, according to the rule laid down in *Muse* v. *Stern,* we must consider the case under the statutory rule, as upon a demurrer to the evidence by the defendant, the plaintiff in error here, notwithstanding the first verdict was rendered in its favor, for so the law is written. And viewing the case in this light, the judgment must be affirmed.

There is no doubt, we think, that according to the true construction of the contract, the defendant company was not bound to furnish the plaintiff the best ice harvested on the Penobscot

river, but the best that by reasonable effort could be harvested from the fields, controlled by it on the said river, and such was the construction put upon the contract by the circuit court. This is clear upon the face of the contract, and is, besides, in accordance with the construction put upon it by the plaintiff herself; for in a letter, addressed by her to the defendant company, on the 28th of July, 1886, she wrote: " My contract calls for the best ice harvested on fields of Eastern Ice Company on the Penobscot river," and this would be decisive of the matter, even if the language of the contract were doubtful, as it also accords with the construction given to it by the defendant. *Chicago* v. *Sheldon*, 9 Wall., 50, 54; *Knopf* v. *R., F. & P. R. R. Co.*, 85 Va., 769.

But the evidence shows that the best ice harvested.by the defendant company on its said fields was not delivered by it to the plaintiff, .or, at least, only a small portion of the ice it delivered was of that quality. The greater portion of it was of very inferior quality. Much of it was "anchor ice," and a part of it "little better than scrap ice," and some of it was not marketable at all. Indeed, we think the case, in this particular, is established for the plaintiff by the defendant's own evidence; for it is admitted by the president of the company, who testified as a witness before the jury, that the ice delivered to the plaintiff was not of the best quality, but he insisted that it was of average quality, and this, he seemed to suppose, was a compliance with the contract of the company with the plaintiff. He says the ice was cut from the river and run into the ice-houses, from which it was shipped to the plaintiff, "*just as it run*," and that the same quality of ice was shipped to the plaintiff that was shipped to every other customer of the defendant during the year 1886. He also says: " We considered that we had only one quality of ice, and every customer's vessel was loaded in its turn." Yet he admits, while saying that the ice harvest of 1886, was a very poor one, that a part of the ice harvested by his company that year was of *excellent quality*, and

so it was, for the evidence shows that the cargo shipped to the plaintiff by the vessel called the "Annie Lord," containing 421 tons, was of that quality, and so also was a part of the cargo shipped by another vessel.

There is no doubt that all the vessels were loaded in their turn from the defendant's ice-houses, and that each received the ice as it ran. And this undoubtedly would have been a fulfilment of the contract with the plaintiff if that contract had called for ice good, bad, or indifferent. But as it did not, and as it calls for the best ice harvested by the defendant, the furnishing of an average quality was not a compliance with its terms.

We think, therefore, without going into a further review of the evidence, which is voluminous, that the first verdict rendered by the jury was not warranted by the evidence, and that it was rightly set aside.

It also follows from what has been said, that the circuit court did not err in refusing to give to the jury the following instruction: "Said contract must be reasonably construed, and if the jury believe that said company furnished the best quality of ice, not picking out special lots, but as the ice ran, and such as it was furnishing to all its customers, that is a compliance with said contract, and the jury should find for the defendant."

If taking the ice as it ran did not result in furnishing *the best* quality harvested by the defendant, as we have seen it did not, then the instruction was wrong and was properly refused; nor were the rights of the plaintiff, under her plain and specific contract with the defendant, to be determined by the defendant's course of dealing with its other customers, whose contracts may have been very different. She has the right to stand upon her own contract, and if in order to furnish the best quality of ice, or, in other words, to comply with that contract, it was necessary for the defendant to "pick out special lots," it was its duty to have done so. The plaintiff contracted

not for average ice, but for the best, and she was entitled to get it.

Complaint is also made of the refusal of the circuit court to give to the jury the following instruction: "That it was the duty of the plaintiff to have claimed damages, and to have rejected cargoes within a reasonable time after they arrived, and if the jury believe that the plaintiff did fail to make such claims or reject such cargoes within a reasonable time, and that the defendant was injured thereby, then by *laches* on the part of the plaintiff she would be estopped from now asserting a claim for such damage."

This instruction does not state the law correctly, and was properly refused. The true rule is that where goods delivered to the buyer are inferior in quality to that which was warranted by the vendor, the buyer may bring an action for the breach of the warranty immediately, without returning the goods or giving any notice to the seller, though it has been held that the failure either to return the goods, or to notify the vendor of the defect in quality, raises a presumption that the complaint of defective quality is not well founded. *Vincent* v. *Leland*, 100 Mass., 432; *Fisk* v. *Tank*, 12 Wis., 276; *Day* v. *Pool*, 52 N. Y., 416; 2 Benj. Sales (8th Am. ed.), sec. 1354.

The objection that the verdict at the last trial was not warranted by the evidence, is also untenable. The plaintiff's evidence shows that of the ice shipped by the defendant company to the plaintiff, in 1886, about eight hundred tons, or nearly one-third, was utterly worthless, and had to be thrown away, and that if the ice thus thrown away had been of the quality contracted for, it would have netted the plaintiff at least $1,200. In other words, the difference in this city between the value of the ice thrown away—which was nothing—and the value of the same quantity of the best quality of ice harvested by the defendant company from the fields controlled by it on the Penobscot river, in 1886, was not less than $1,200; and in addi-

tion to this, the evidence shows that, on account of the inferior quality of much of the ice actually sold by the plaintiff, she was obliged to make discounts to her customers—in some instances amounting to as much as from $25 to $30 per month.

The court at the trial instructed the jury that if they should find for the plaintiff, the measure of damages was the difference between the value in Richmond of the best ice above mentioned and the ice actually received by the plaintiff at the time the cargoes were shipped after the 17th of June, 1886, and this is the true rule. In Wood's Mayne on Damages, sec. 224, the rule is thus stated : "Where the article has not been returned, the measure of damage will be the difference between its value, with the defect warranted against, and the value which it would have borne without that defect. It was formerly laid down that the measure would be the difference between the contract price and that for which it would sell with its defect. But the rule in England is now settled as stated above, and the doctrine in America is the same." See also *Thornton* v. *Thompson*, 4 Gratt., 121.

There is no error in the judgment of the circuit court, and the same must be affirmed.

JUDGMENT AFFIRMED.