## DETERMINED BY THE

# SUPREME COURT OF APPEALS

### OF

## WEST VIRGINIA

---

## CHARLESTON.

### WILSON v. WIGGIN.

Submitted September 21, 1915.   Decided October 26, 1915.

1. COSTS—*Appeal—Transcript of Testimony.*

    In absence of statute or stipulation of the parties, money paid by appellant to a stenographer for a transcript of the stenographic notes of the testimony adduced in the trial court, preparatory to application for and hearing upon an appeal, is not recoverable as costs.  (p. 2).

2. DAMAGES—*Breach—Burden of Proof—Damages Recoverable.*

    To entitle plaintiff to recover substantial damages for breach of contract, where the loss is pecuniary and susceptible of proof with approximate accuracy, he must establish the quantum of damages with reasonable certainty.  Where no sufficient data is afforded whereby a jury may definitely ascertain the compensation due for the breach, recovery therefor can be nominal only.  (p. 4).

3. SALES—*Breach of Contract—Measure of Damages.*

    For breach of contract for the sale of personalty, by non-delivery of the property, the measure of damages ordinarily is the difference between the contract price and the market value of the articles at the time and place specified for delivery.  (p. 5).

4. SAME—*Breach of Warranty—Measure of Damages.*

    Under such contract, for breach of warranty as to the quality of the goods, where they are accepted and retained by the purchaser, the measure of damages is the difference between the value which the articles sold would have had at the time of delivery if sound and corresponding to the warranty, and their actual value at that time with the defect.  (p. 5).

Appeal from Circuit Court, Raleigh County.

Suit by W. L. Wilson against H. D. Wiggin. From decree for plaintiff, defendant appeals.

*Modified and affirmed.*

*File & File*, for appellant.

*T. N. Read, A. A. Lilly* and *J. E. Brown*, for appellee.

Lynch, Judge:

Upon the withdrawal of the motion for an issue out of chancery, after the remand on the former appeal (73 W. Va. 560), the cause was submitted for decision on the record and briefs theretofore filed and any additional argument in writing desired by counsel, with the further provision that on any finding for plaintiff defendant should have credit for all costs awarded in the cause in his favor, the amount thereof to be taxed by the clerk. The court did find for plaintiff the amount ascertained by the jury upon the trial of the issue, but refused to credit thereon $112.50 paid by defendant for transcribing the stenographic notes of the evidence adduced upon such trial, preparatory to the application and hearing upon the appeal awarded him. The amount claimed and payment are conceded. The right to credit therefor was denied solely on the ground, as recited by the final decree, that "the same is not recoverable costs".

This conclusion was not erroneous. There is no general statutory provision in this state allowing recovery of such expense. In the absence of such provision or a stipulation of the parties, payment made for services of a court reporter in the trial of a case, at the request of one or both parties, is not allowable as costs. *Cohen* v. *Weill*, 65 N. Y. S. 695; *Provost* v. *Farrell*, 13 Hun. 303; *Bringgold* v. *Spokane*, 19 Wash. 333. This rule applies though the translation of the notes be procured for the purpose of preparing the record for an appellate process. *Brown* v. *Winehill*, 4 Wash. 98.

The second item not credited to appellant Wiggin was $124, paid by him as compensation for the difference between the value of the lumber he sold to Atwood Brothers at Whitman, Massachusetts, and the lumber purchased by him of the plaintiff for vendition to them, under a contract of purchase

for one million feet of lumber of definite quality and grade at fixed prices per one thousand feet. The agreement between plaintiff and defendant was executory for future delivery. The Atwoods purchased of Wiggin certain of the grades. He ordered it from Wilson, who pursuant to directions by Wiggin and in part execution of the contract between them, shipped it to the Atwoods. They complained of the inferiority in the grades and declined to pay the agreed price, demanding a reduction of the amount allowed by Wiggin and now claimed by him as a proper credit on the decree rendered on the final hearing of the cause. The correctness of the amount so deducted and allowed is not disputed. But for plaintiff it is contended the lumber shipped conformed with that he agreed to sell and did sell to defendants.

They had theretofore been dealing with each other in the purchase and sale of the same character, quality and grades of lumber. No discord had arisen out of their former dealings. The contract now involved is evidenced only by correspondence. June 9, 1908, plaintiff proposed to sell defendant one million feet of poplar at the same price he was receiving from Wiggin, "to be log run, all mountain poplar". Two days later Wiggin replied: "In conformity with your offer of June 9, I will take the one million feet of mountain poplar, to be delivered during 1909, at the same prices that I am now paying, viz., 1s and 2s $40.00, bright saps $30.00, No. 1 common $25.00, shipping culls $16.00; terms of payment to be identical with our contract of 1908". That agreement required delivery "f. o. b. cars North Wilkesboro (North Carolina), or a point taking an equal rate of freight to Boston". The offer and acceptance were repeated in letters of subsequent dates, the last by Wilson omitting to define the lumber as mountain poplar but saying "it is my understanding that I have sold you one million feet of poplar, log run", repeating the prices theretofore specified by the negotiations. A former letter by Wiggin described the lumber as "mountain poplar, soft and yellow, well sawn and well taken care of". The whole tenor of the correspondence was such as to indicate the character of the lumber intended by the parties. Besides, the lumber shipped proved satisfactory and unobjectionable in quality until the shipment to the At-

woods in October, 1909, the year prescribed for complete delivery. They interpreted the meaning of the contract to be as defendant contends it is, one for soft mountain poplar. The lumber shipped to the Atwoods, the witnesses described as "hickory or bastard poplar", flinty in texture and disposed to twist and buckle. Not all of it was soft or mountain poplar, as generally understood by those engaged in the manufacture and sale of lumber. In quality, it did not correspond with that sold by defendant. Hence, the declination to pay for it, without a reduction to the extent claimed and allowed. To this defendant was entitled to credit.

Of the defectiveness in quality of other shipments under the contract, the proof is inconclusive. Nor is there any definite showing of deductions from the prices at which other timber shipped by plaintiff, as directed by Wiggin, was sold by the latter.

But defendant challenges the correctness of the amount by the decree found due from him. For shipments made pursuant to his order he refused to pay, because not conforming with the quality prescribed. To enforce payment therefor plaintiff instituted this proceeding, based upon an attachment against defendant as a non-resident. He appeared, and claimed the right to recoup damages for breach of the contract. Plaintiff failed and refused further to furnish the stipulated quantity, basing his action upon results of inspections made according to rules promulgated by the legislature of Massachusetts.

Defendant undertook to show, and in effect did show, the quantity of the several grades he did not receive. But when asked to state the quantum of the damages thereby sustained he replied: "I can't tell how much. It is at least three or four thousand dollars—five thousand dollars; I don't know; it is as much as that; and I don't know but that it is a whole lot more; I can't tell you". To recover damages for breach of contract, the claimant must prove with reasonable certainty the extent of the injury sustained by him. *Linotype Co.* v. *Printing Co.*, 59 Pac. (Kan.) 1066; *Sizer* v. *Melton*, 129 Ga. 143; *Capen* v. *Glass Co.*, 105 Ill. 185; *Schon-Klingstein Co.* v. *Snow*, 43 Col. 538. If the loss is pecuniary and susceptible of proof with approximate accuracy, he must furnish the neces-

sary proof, and can not leave the quantum to conjecture. *Specialty Co.* v. *Wood Co.*, 47 Minn. 393; *Barngrover* v. *Maack*, 46 Mo. App. 408. Ordinarily, the amount of damages occasioned by such breach is to be proved in the same manner as any other fact essential to recovery. *Parks* v. *Frank*, 75 Cal. 364. Where no sufficient data is afforded whereby a jury may with reasonable certainty ascertain the requisite compensation for the breach, recovery therefor can be nominal only. *Fessler* v. *Love*, 48 Pa. 407; *Howard* v. *Taylor*, 99 Ala. 450. When the vendor of chattels fails to deliver the property according to his undertaking, the rule generally adopted as the measure of the damages thereby occasioned is the difference between the contract price and the market value of the article at the time when and place where it should have been delivered. 2 Sedgwick on Damages (9th Ed.) §734; 35 Cyc. 633. Such is the Virginia rule. *Smith* v. *Snyder*, 77 Va. 432, 82 Va. 614. However, if the time of delivery is postponed by agreement of the parties or by their acquiescence in such postponement to a subsequent date, the latter is to be considered in the comparison of values. *Sizer* v. *Melton, supra*; *Bloom* v. *Americus Co.*, 116 Ga. 784; *Connersville Wagon Co.* v. *Carriage Co.*, 166 Ind. 133; *Chemical Co.* v. *Geiss*, 143 Ala. 591.

Much reliance is placed by defendant on *Hurxthal* v. *Boom Co.*, 64 W. Va. 346, holding that substantial damages may be recovered though the loss can be stated only approximately. There, however, exactness in proof was impossible. Involved in it was a claim for damages for the breach of contract to maintain dams to a mill and otherwise secure a sufficiency of water to operate it. The measure prescribed as reasonably appropriate was the rental value of the mill if maintained and operated as required by the contract, compared with the value after such breach. Opinion evidence as to the quantum was there held to be admissible. From the very nature of the injury, no definite data apparently was available. But for the measurement of damages for breach of contract for the sale of personalty there is ordinarily an approved method of proving the loss and injury sustained.

After reviewing many decisions involving the proper standards for the admeasurement of damages where the goods

delivered do not correspond in quality with the contract, Sedgwick says: ''The better rule for measuring damages is the difference between the value which the thing sold would have had at the time of the sale if it had been sound or corresponding to the warranty, and its actual value with the defect''. 2 Sedgwick on Damages (9th Ed.) §762. But, in the same section, the author further states the rule to be that ''where the goods were to be shipped abroad, which fact was known to the vendor, and the defect could not be discovered till they reached their destination, it was held that the measure of damages was the difference between the marketable value contracted for on the day of arrival and the actual value there which might be the price realized by a sale of the article received together with the expenses of sale;  *  *  * and where the goods were sold abroad before the breach of the warranty was discovered, and the plaintiff (the vendee) was compelled to take them back on account of the'defect and sold them again at a lower price, he was allowed to recover the difference between prices realized at the two sales''. What the author cited said on the measure of damages is supported by *Thornton v. Thompson,* 4 Gratt. 121; *Ice Co. v. King,* 86 Va. 97; 35 Cyc. 468. That defendant purchased the lumber for re-sale on a different market and at an enhanced price, plaintiff knew from past dealings between them. The place of delivery to defendant was North Wilkesboro, North Carolina, for shipment and re-delivery wherever he should find a purchaser. He did find Atwood Brothers at Whitman, Massachusetts, and to them sold the lumber subject to inspection at that place. Of course, the contract for this sale did not specify any point for survey as to quality. In such case, however, the place of delivery ordinarily is the place of inspection; and where delivery is by a carrier the place of final destination usually is the point at which the inspection may be had. 35 Cyc. 226.

So that, in any event, defendant failed to prove the extent of his injury, if any suffered by him, or to furnish any substantial basis for the ascertainment of the damages resulting from the nonperformance of the contract, except as to the $124 deducted by the Atwoods. For this amount he should have been credited on the sum decreed plaintiff. Being cor-

rectible here, the decree will be modified so as to allow such credit with interest thereon from November 1, 1909, to this date, and otherwise affirmed, with costs to the appellant.

*Modified and affirmed.*