# CHARLESTON.

Hume & Warwick Co. *v.* Condon *et al.*

(Brannon, President, *dissenting.*)

Submitted January 22, 1898—Decided April 2, 1898.

1. **Husband and Wife**—*Gift to Wife—Fraudulent Conveyance.*
     A husband may make a donation to his wife or return her a loan of money received, augmented by profits, if he retain an amount of tangible property largely more than sufficient to pay all his just indebtedness. (p. 557.)

2. **Equity Jurisdiction**—*Allegations of Fraud—Legal Claim.*
     Mere allegations of fraud, denied by answer and unsustained by proof, will not justify a court of equity in taking jurisdiction of a contested legal claim. (p. 558.)

Appeal from Circuit Court, Summers County.

Bill by Hume & Warwick Company against E. M Condon and others. Decree for plaintiffs, and defendants appeal.

*Reversed.*

T. J. MANN AND JOHN OSBORN, for appellants.

MILLER & READ, for appellees.

DENT, JUDGE:

W. W. Hume, John Warwick, and H. A. Mosely, partners in business under the firm name and style of Hume & Warwick Company, filed their bill in chancery against E. M. Condon and Sue Condon, his wife, and W. A. Garland, in the circuit court of Summers county, alleging therein "that on the 3d day of October, 1894, the defendant E. M. Condon executed a certain promissory note, negotiable and payable one day after the date thereof, at the deposit bank of Pearce, Fant & Co., Flemingsburg, Ky., to one W. A. Garland, for the sum of six hundred dollars;" "that the said W. A. Garland indorsed the said note, and assigned and transferred the same to these plaintiffs for value received; that said note, although long since due and payable, has not been paid, nor has any part thereof; that on the 26th day of November, 1893, the said E. M. Condon purchased of Henrietta L. Perkins a certain lot or parcel of land situated on Temple street, in the town of Hinton, fronting 39 feet on said street, and running back 140 feet to an alley, it being a portion of lot No. 4, in block letter 'S,' on the map of said town, paying therefor the sum of $2,100, as set out in the deed therefor; that, intending to hinder, delay, and defraud his creditors, and especially the plaintiffs, the said E. M. Condon had and procured the said Henrietta L. Perkins to execute the deed for said lot to his wife, Sue A. Condon (who is the defendant Sue Condon), although every cent of the purchase money therefor had been furnished and paid by the said E. M. Condon (see duly-certified copy of said deed herewith filed marked 'Exhibit B,' and asked to be read as a part hereof), and plaintiffs aver and allege that

the said Sue Condon had notice of said fraudulent intent and conduct; that their debt was incurred previous to the deed from said Perkins to Sue A. Condon; that said deed was not a *bona fide* transaction, but was made for the express purpose of defrauding the creditors of the said E. M. Condon, and is a barefaced fraud and sham, and that Sue A. Condon was at the time of said deed perfectly insolvent, and never before that time was possessed of any property whatsoever with which to make any purchase of said real estate. Plaintiffs aver that said real estate is in point of fact the property of E. M. Condon, and is in equity liable to the payment of plaintiffs' said debt against the said E. M. Condon; that the rents and profits of said land will not in five years satisfy the plaintiffs' debt; and that the said E. M. Condon is utterly insolvent as to personal property, having transferred all of his personal property to his said wife. Being remediless in the premises, save in a court of equity, where such matters are properly cognizable, plaintiffs pray that said deed from Henrietta Perkins to Sue A. Condon, dated November 26, 1864, and conveying the real estate hereinbefore mentioned, may be set aside, annulled, avoided, and held for naught, in so far as it seeks to affect the plaintiffs in the collection of their said debt; that said real estate may be subjected to sale, and the proceeds applied to the payment of their said claim. May proper process issue, and may they be granted such other, further, and general relief as to equity may seem proper and their case demand." The defendant Sue A. Condon filed her separate answer to this bill, denying all knowledge of fraud as therein alleged, and claiming that she purchased the property in controversy with her own means, and insisting the same was not liable to the plaintiffs' debt, about which she knew nothing. The defendant E. M. Condon filed his demurrer and answer to the bill, fully denying all the allegations of fraud and insolvency therein charged, and setting up as a defense to the note that the defendant Garland was the agent of the plaintiffs, and as such obtained said note from the defendant by false pretense, assurance, and representation, without any consideration whatsoever, and that the same was fully subject to all defenses in the hands of the pres-

ent holders thereof, who were fully cognizant of and bound by all said Garland's fraudulent representations with regard thereto, and insisted that plaintiffs' remedy was at law, and not in equity.

The evidence in this case undoubtedly and strongly tends to sustain the defendants' pretentions with regard to the fraud practiced in the procurement of said note. As to other questions, the evidence strongly refutes the allegations of the bill as to the fraud alleged and as to the insolvency of the defendant E. M. Condon. He is not shown to be indebted to any person outside of the note involved. Plaintiffs prove, by the introduction of his father's will, and cross-examination of himself, that he received ten thousand dollars from his father's estate at a very recent date, four thousand dollars of which he turned over to his wife in reimbursement for two thousand dollars he borrowed of her about the time of their marriage, in 1891, which he put in his business, and the other six thousand dollars, together with the money he borrowed from her, he still has. He refused to tell where and how he had it invested unless he was compelled to do so, as it was his private business, but stated he had the money to pay plaintiffs' debt whenever the court on a final hearing directed its payment; that he was now engaged in carrying on the bakery and confectionery business in his own name. . The evidence also shows that the wife at the time of her marriage had two thousand dollars to loan. There is nothing fraudulant in the fact that the defendant E. M. Condon, on receiving ten thousand dollars from his father's estate, should turn over four thousand thereof to his wife, in return for two thousand dollars loaned by her some years before, especially as she immediately invested in property for their common use. Six thousand dollars he still retained, and in addition thereto had his investments in his business; apparently, from the evidence brought out by the plaintiffs themselves on cross-examination, making him worth from eight thousand dollars to ten thousand dollars, while his only indebtedness is the disputed note involved in this case. While section 2 chapter 133, Code, authorizes a creditor to institute a suit to set aside a fraudulent conveyance before obtaining a judgment on his claim,

it was never intended thereby, under the mere pretext of setting aside such fraudulent conveyance, to permit a litigant to foist on a court of equity the duty of determining doubtful and disputed claims, and thus deprive his opponent of the right of trial by jury guaranteed him by the Constitution.

One of the plaintiffs produces and files with his evidence a copy of the will of David Condon, showing that E. M. Condon was entitled to and received from his father's estate at least ten thousand dollars. The copy purports to have been made on the 7th day of February, 1895, about the time this suit was instituted. Hence the plaintiffs must have been fully aware of its contents, and thereby informed of the financial condition of the defendant at the time they alleged his insolvency. Granting, for the sake of argument, that the four thousand dollars turned over to the wife by the husband was a mere gift of settlement for her benefit, yet this would not sustain the plaintiffs' contention. "The ancient rule that a voluntary postnuptial settlement can be avoided if there was some indebtedness existing has been relaxed, and the rule generally adopted in this country at the present time will uphold it, if it be reasonable, not disproportionate to the husband's means, and clear of any intent, actual or constructive, to defraud creditors." *Kehr* v. *Smith*, 20 Wall 35; *Hunter* v. *Hunter*, 10 W. Va. 321. "This rule is generally adopted even where a statute expressly provides that a transfer from husband to wife in prejudice of the rights of subsisting creditors shall be invalid. A husband's love and affection for his wife, and a desire to secure her support, is ample reason for a gift to her. Still his actual intention is a mere question of fact; but whether the gift is a reasonable one, considering his circumstances, seems to be a question of law. It is reasonable if his debts are trifling, or if he retains enough to readily pay them all; but unreasonable if his debts are so great as to embarrass him, or if he is insolvent, or if the gift leaves him insolvent, or if he denudes himself of all his property, or if the property he conveys is easily accessible to creditors, while that which he retains, though ample in amount, is inaccessible to them." 14 Am. & Eng. Enc. Law, 563, 564. The defendant re-

ceived ten thousand dollars.   He turned over to his  wife
four thousand dollars to secure for her a home.   The res-
idue, together  with other funds invested in his  business,
he  retains, in all exceeding eight thousand dollars.   The
only  indebtedness shown to exist against him is  this  dis-
puted  six hundred  dollar note held by plaintiffs.   The
character of property turned over to his  wife, afterwards
invested in real estate, is similar to that he retains.   Such
provision for his wife, under  the  circumstances, was  not
only equitable and just, but highly commendable; nor does
it in any manner justify the apparently  mere  suspicion of
the plaintiffs that it was done to evade the payment of their
claim.

It is true that it does not  appear  outside of his business
where defendant E. M. Condon has his large estate invest-
ed;  neither does it appear that the plaintiffs ever obtained
a judgment, and tried in the manner pointed out by law to
reach the same.   On  the  contrary,  no  effort of this kind
has been made.   But it does appear that Condon had more
than  sufficient  invested  in  his  business  to  pay  this
debt, and he himself testifies that he holds himself  ready
to pay it whenever the court shall say it is  a  just  demand
against him.   The plaintiffs have failed to show, as alleged
in their bill, that their alleged debtor is insolvent,  that  he
had the real estate involved fraudulently conveyed to his
wife without consideration, that he turned over all his per-
sonal property to his wife, and that he is indebted to any
extent.   On the contrary, they have shown that he is  sol-
vent; that he is worth eight thousand dollars; that he owes
no debt other than their note, the justness of which he
disputes; and the evidence shows that the funds turned
over to his wife were for a full and fair consideration, be-
ing for two thousand dollars loaned money, and one-half
the profits in his business, according to agreement.   What
juster claim could there possibly be, and, if a wife sets her
husband up in business, why should she not receive one-
half the profits thereof, especially when the rights of other
creditors are not in any wise jeopardized thereby?   Such
a claim is far more worthy of equitable consideration than
a note obtained, at least, by dubious representations, and
founded on a consideration claimed to be a humbug and

fraud, used for the purpose of "roping in a sucker," and admitted not to be a necessity, but a good thing "for suckers." Before a court of equity should entertain such a claim, its conscience needs to be placated by the verdict of a jury which has heard the interested witnesses testify, and had the opportunity of passing on their credibility. The plaintiffs cannot otherwise cleanse their hands from the seeming odium of this transaction, and render themselves worthy of equitable interposition in their behalf. As a trial at law must be had, it is improper at the present time to comment on the evidence in relation to the defense of failure of consideration, fraudulent misrepresentation, and false pretenses set up by the defendant E. M. Condon in his answer. The decree complained of is reversed, and the bill is dismissed, without prejudice to any suit at law the plaintiffs may be advised to bring for the recovery of the note sued upon.

BRANNON, PRESIDENT, (*dissenting*):

I cannot unite in this decision for several reasons:

1. It is contrary to the Code provisions that every voluntary conveyance is void as to existing creditors, no matter how pure in intent; no matter whether the grantor had, or had not, enough property left to pay his debts; no matter what his debts amounted to. The amount of his indebtedness and the amount of his property left besides that conveyed were proper matters, before the statute, for consideration, and are now, when we are seeking to set a deed aside as to subsequent creditors; but it is utterly immaterial and foreign to the question whether a voluntary conveyance shall be set aside as to existing creditors. It seems to me that the decision in this case reopens the door to variable oral evidence and opinion as to a man's pecuniary worth and his indebtedness and his intent, which the statute was designed to close,—vexatious questions, which "ought to be regarded as cut up by the roots," to use the apt and forcible expression of PRESIDENT LUCAS in discussing this statute in *Greer* v. *O'Brien*, 36 W. Va. 284, (15 S. E. 74).

2. The law presumes that property acquired by a wife was paid for by the husband until she prove that it was

paid for out of her separate estate. *Burt* v. *Timmons*, 29 W. Va. 441, (2 S. E. 780). But here the proof shows that it was paid for with his means.

3. The claim of a loan by the wife of two thousand dollars is sustained by no proof save the husband's and wife's evidence. No note was taken; nothing to indicate an intent to make a loan,—a mere understanding between them, at best indefinite, that it was to be repaid, if he did get any money of hers. The law presumes that a gift, not a loan, was in view. This will not authorize him to pay her four thousand dollars out of his means, to repay a pretended loan of two thousand dollars a short time before. *Bennett* v. *Bennett*, 37 W. Va. 306, (16 S. E. 638). This was virtually a conveyance from husband to wife, injurious to creditors, under principles stated in *Mayhew* v. *Clark*, 33 W. Va. 387. (10 S. E. 785).

4. The bill states facts which clearly give jurisdiction in equity, and that is the test of jurisdiction, not whether, at last, the evidence proves these facts. Mere failure to prove the facts by no means shows a want of jurisdiction. "Jurisdiction always depends upon allegations, never upon the facts. When a party alleges that a certain right is denied him, and the law has given the tribunal power to enforce that right, it must proceed to determine the truth or falsity of his allegation. The truth of the allegation does not constitute jurisdiction. The tribunal must have jurisdiction before it can take any adverse step; its jurisdiction, necessarily, from the allegations, assuming them to be true." Van Fleet, Coll. Attack, § 60. The United States Supreme Court says in *U. S.* v. *Arredondo*, 6 Pet. 709, that if the petition states such a case that on demurer the court would give judgment for plaintiff, it is an undoubted case of jurisdiction to hear and determine. That is the test. Hawks, Jur. § 3; Wells, Jur. § 4.

*Reversed.*