# CHARLESTON.

ADAMS *v.* IRWIN *et al.*

Submitted February 2, 1898—Decided April 16, 1898.

DIVORCE—*Debts of Husband—Liability of Wife.*

> Where the allegations and proofs are insufficient to justify it, it is error for the circuit court to subject a divorced wife's property to the payment of the debts of her husband's creditors, by reason of improvements alleged to have been placed thereon with intent to delay, hinder, and defraud such creditors. (p. 743).

Appeal from Circuit Court, Tucker County.

Bill by John J. Adams against John W. Irwin and others. Decree for plaintiff, and Grace Ebert appeals.

*Reversed.*

J. P. SCOTT and A. JAY VALENTINE, for appellant.

W. B. MAXWELL, for appellee.

DENT, JUDGE:

Grace Ebert appeals from a decree of the circuit court of Tucker county in a chancery cause therein pending wherein John J. Adams was plaintiff, and appellant and others were defendants. The bill alleges that plaintiff is the owner of a judgment for one hundred and sixty-four dollars and two dollars and fifty cents costs, bearing date 1st February, 1894, assigned to him by A. C. Minear, against J. W. Irwin, formerly husband of appellant, but now divorced from her; that on the 5th day of March, 1888, Jacob H. Long, father of appellant, conveyed to her a lot of ground situated in the town of Parsons, she at that time being the wife of J. W. Irwin; that said lot was worth about one hundred dollars without the improvements, but with them was worth one thousand dollars; that such improvements were placed on said lot by said J. W. Irwin with intent to delay, hinder, and defraud the collection of plaintiff's debt; eighty-seven dollars and forty cents of said debt was for lumber furnished by said Minear to said Irwin for the purpose of, and was used in making such improvements; that June 8, 1888, Minear, believing that the property was in the name of said Irwin, took a mechanic's lien against the same for the price of the lumber, but in a short time, learning his mistake, abandoned the same; that said Irwin has absolutely no personal property out of which the debt can be made, and refuses payment thereof; and he prays for the sale of said property, and payment of his debts out of the proceeds. Appellant filed her answer, in which she alleged that the judgment was obtained on a pretended account barred by the statute of limitations, and fully paid off and discharged, by collusion between said Irwin and Minear, after she had been divorced from Irwin, for the express purpose of assailing appellant's property and defrauding her out of it; that not only was the lot given her, but the improvements placed thereon, by her father; that the allegations of fraud were false; and that the whole matter was a scheme concocted

by said Irwin and Minear to defraud her. The deposition of Irwin was taken. He testified that the debt is just and unpaid, and that he improved his wife's property to the amount of about seven hundred dollars. A. C. Minear testified that the judgment was for a note given about the time suit was brought, for the lumber account, and for an old store account made about the year 1885. The appellant testified that Minear had been paid the lumber account, and her husband had the receipts therefor, and she knew nothing about the store account, as it was made before she married Irwin, but her husband had told her at the time the balance on the lumber was paid, and that he owed Minear nothing, and that she never knew that Minear ever claimed anything until she and her husband separated. Jacob H. Long testified that he gave Irwin ten dollars to pay a balance on the lumber account, and Irwin took a receipt therefor, and said, "Now he was rid of Add Minear, as that paid all he owed him;" and he also understood from Minear that the amount was all that Irwin owed him, and he was glad to get it. This was shown to have been in June, 1889. There was some other testimony, which it is unnecessary to mention. There was no allegation in the bill and no evidence showing that Irwin was insolvent at the time the alleged improvements were put on the property by him. Nor is there any excuse given why plaintiff, or his assignor, waited from the year 1888 until the year 1894, a sufficient time to bar the debt by the statute of limitations, before attempting to enforce payment thereof. The bill does not attack the improvements as a gift from husband to wife, presumably because of the bar of the statute. If it did so, it would be demurrable for this reason. The sole ground relied on by the plaintiff is that the improvements were put on the property with intent to delay, hinder, and defraud the creditors of J. W. Irwin, which intent was known to and participated in by the defendant Grace Ebert, late Irwin. On the hearing of the case the court decreed that the interest of J. W. Irwin in the property by reason of the improvements put thereon was four-fifths, and the appellant's, by reason of the ownership of the lot, was one-fifth, and decreed a sale thereof for the payment of plaintiff's debt.

On the question of fraud there is not sufficient evidence to sustain this decree. It is not shown that at the time the improvements were placed on the property any intention to defraud existed, or was in any manner communicated to the appellant. On the contrary, the facts and circumstances, taken as a whole, rebut such intention. It does not appear that at the time thereof J. W. Irwin was insolvent, or indebted to any extent, or that the debt could not have been made off of him if an attempt had been made to do so. "Insolvency, to affect the *bona fides* of the conveyance, must be co-existent therewith." *Scraggs* v. *Hill*, 43 W. Va. 162, (27 S. E. 310). A husband not indebted beyond his power to pay, or to embarrassment, may make a gift to his wife, *Hume & Warwick Co.* v. *Condon*, 44 W. Va. 553, (30 S. E. 56). And from such gift an intent to defraud will not necessarily follow as a presumption. There is nothing in the record to justify the presumption of fraudulent intent at the time the improvements were made, but there is much tending to show a collusion between Irwin and Minear to deprive appellant of her property on a mere pretense. The husband, after a divorce, could not reclaim this property directly. *Handlan* v. *Handlan*, 42 W. Va. 309, (26 S. E. 179). But he takes this indirect way to do so. His refusal to submit himself to cross-examination, in the light of the testimony, tends greatly to support appellant's answer. A gift, after five years from the date thereof, occupies much the same position as a sale to a purchaser for value (*McCue* v. *McCue*, 41 W. Va. 151, (23 S. E. 689); *Scraggs* v. *Hill*, cited). and throws on the plaintiff the burden of proving fraudulent intent on the part of the grantor, with knowledge of or participation therein by the grantee.

Appellee's counsel asks two questions as conclusive in this case: (1) Did J. W. Irwin in fact put seven hundred dollars of permanent improvements on his wife's fifty dollar lot? (2) Was J. W. Irwin in debt to A. C. Minear at the time he made those improvements? Admitting both these propositions to be uncontroverted, yet they are wholly insufficient to sustain plaintiff's case. If the indebtedness remained unpaid, and the debtor was financially embarrassed, or without property to pay the same, at the

time of the contraction thereof, and continued so until the
bringing of this suit, and the debt was not barred by the
statute of limitations by reason of the laches of the creditor,
then the plaintiff might prevail; otherwise his case is
insufficiently made out, and must fail for want of allegation
and proof.   If Minear's debt was at one time good against
appellant, and he permitted it to be barred by the statute
of limitations as to her separate estate, her divorced hus-
band could not revive it, by note or otherwise, so as to still
bind her estate, unless she in some way was guilty of
actual fraud, which in no wise appears.   The decree is
reversed, and the bill dismissed.

*Reversed.*