# CHARLESTON.

ENSLOW v. SLIGER.

Submitted January 15, 1902. Decided April 5, 1902.

<table>
<tr><td>51</td><td>405</td></tr>
<tr><td>f65</td><td>645</td></tr>
</table>

1. FRAUDULENT CONVEYANCE—*From Husband to Wife.*

　　The mere payment by a husband, though indebted, but clearly solvent, for lots intended as a permanent home, and conveyed to the wife by his vendor at his request, or payment by him

for building a house thereon, will not alone establish actual fraudulent intent, so as to subject the lots to after made debts; but these are circumstances to be considered with others upon the question of such intent. (p. 407).

Appeal from Circuit Court, Cabell County.

Bill by F. B. Enslow against Sarah A. Sliger and others. Decree for defendants, and plaintiff appeals.

*Affirmed.*

SIMMS & ENSLOW, for appellant.

NORTHCOTT & PERRY, for appellees.

BRANNON, JUDGE:

F. B. Enslow brought this suit in the circuit court of Cabell County against Sarah A. Sliger and others, alleging that Thomas J. Sliger, husband of Sarah A. Sliger, had purchased four lots in Central City, and paid for them, and caused them to be conveyed to his wife by deed the 8th of December, 1891, when he was largely in debt, but doing a large business; that on May 9, 1892, and March 16, 1892, Sliger and his wife made two deeds of trust to a loan society for a loan of one thousand and fifty dollars; that after said conveyance Sliger furnished lumber and built a house on the lots as a home for himself and his family; that ever since and up to the date of the suit Sliger had been largely indebted, and was insolvent at the date of the suit; that on 24th December, 1896, Sliger executed a note for five hundred and twenty dollars and sixty-five cents to E. B. Enslow, which was endorsed to F. B. Enslow. The bill charged that the conveyance of these lots to Mrs. Sliger was intended by her and her husband to defraud creditors, and it sought to subject the property to the payment of the plaintiff's debt. The bill was dismissed, and Enslow appealed.

The bill charges that of the indebtedness of eight thousand dollars or ten thousand dollars, which Sliger owed when he purchased the lot, there remained unpaid at the commencement of the suit one thousand eight hundred dollars, and that a part of it was this note of the plaintiff; but the answer denied this allegation, and it is not proven; hence we eliminate the question whether the property would be liable itself as a voluntary settlement by the husband upon the wife. Only two questions

are to be considered. One is: Is the conveyance to the wife fraudulent? · The other is: Is the property liable because the husband put his means into the house? As to the first question. There is no evidence to establish fraudulent intent. The commissioner in chancery to whom that question was referred took evidence and reported that there was no actual fraudulent intent. Under many of our decisions this is forceful in the case. A very decided quantity of disinterested testimony, not met by adverse showing, in addition to the evidence of Sliger and his wife, establishes that Sliger was well off, engaged in a large lumber business, handling much money, when he bought and paid for the lot, and when the house was built in 1891-92, even though he both paid for the lot and the building. He failed in 1896. At the time of the purchase and the building the house he was not by any means embarrassed, and even if the plaintiff's debt were then existing, it would not show actual fraudulent intent in the conveyance of the lots to his wife and in the application of the husband's means in the building. That a husband is in debt when he settles property upon his wife is a circumstance to be considered along with others in determining whether there is fraudulent intent as to debts afterwards made; but it is only a circumstance, though not conclusive. Frequently in a particular case it is a very potent circumstance, but not so in this case. Clearly Sliger had large means when these lots were bought and the house built. He and his wife pledged their oaths, and with considerable plausibility, against the charge of fraud, and there is no adequate showing to overthrow their oaths. We cannot arbitrarily utterly reject their oaths without adequate ground to stand on in so doing. It is urged that Sliger said when asked whether his object was to provide a home for himself and family in having the deed made to his wife, answered, "No sir, I never thought of that. Mr. Caldwell says, here, ·you have plenty, make that house to your wife, and only for that we would not have it." This is thought to show fraudulent intent. It does. not seem so to me. May not a man acquire a home and settle it upon his wife for their joint use and comfort, and have for a purpose the preservation of it as a home against the mere contingencies and chance adversities of future business? Does it conclusively show fraudulent intent as to subsequent creditors? Not necessarily, not conclusively. If he goes on in·

regular business for years afterwards, as this man did, making and paying debts, buying and selling, it would be going too far to say that the mere acquirement of a home would conclusively establish bad faith. There must be something else to show a specific design to cheat future creditors.

As to the other question, that is, whether the property is liable on the theory that Sliger put his means into the building of the house. First, the building was put up before the incurrence of ·the plaintiff's debt; at least it is not otherwise shown; but if even the debt then existed, as Sliger then had means far above debts, according to *Hume & Warwick* v. *Condon,* 44 W. Va. 553, the property would not be liable. But the evidence fairly shows that Sliger did not put any of his means into the house. It was built with one thousand dollars which in 1892 the wife derived from the sale of her own lot in Cumberland, and from interest coming from a note therefor given by her brother, and a little money derived from another kinsman, and the one thousand and fifty dollars borrowed of the loan society. The showing of the defence of ·these things is fairly full, and not met by anything to the reverse. If this woman had not these separate means, we suppose inquiry would have offered something to repel her statement. True, the case ·being between husband and wife, is open to more or less suspicion under our decisions. But the fraud is not established, and the whole case induces us to believe that the woman's property built the home, and ·her showing is not adequately met and overthrown. Therefore we affirm the decree.

*Affirmed.*