# CHARLESTON.

## McCaskey, Trustee, *v.* Potts *et al.*

Submitted February 16, 1909.        Decided May 4, 1909.

1. Fraudulent Conveyances—*Voluntary Transfer—Existing Creditors.*

    The rules and principles of *Lockhard & Ireland* v. *Beckley*, 10 W. Va. 87; *Greer* v. *O'Brien*, 36 W. Va. 277; *Enslow* v. *Sliger*, 51 W. Va. 405, and *Laidley* v. *Reynolds*, 58 W. Va. 418, respecting voluntary and fraudulent gifts or transfers of property, considered and applied. (p. 645.)

2. Same—*Husband and Wife—Transactions Between.*

　　Where a husband becomes indebted to his wife before becoming indebted to other creditors, or while he has ample property to pay, and who, while he still has ample property to pay all other creditors, pays off and discharges his indebtedness to his wife by paying the same directly into a co-partnership, of which she is a member, as cash capital to be provided for by her under the partnership agreement, such payment in suit brought by or on behalf of his other creditors more than three years after such payment will not be treated as a voluntary or fraudulent transfer to his wife, and her interest in such partnership property charged with his debts. (p. 646.)

Appeal from Circuit Court, Wetzel County.

Bill by J. F. McCaskey, trustee in bankruptcy of W. T. Potts, against M. L. Potts and others. Decree for defendants, and complainant appeals.

*Affirmed.*

Hall & Hall, for appellant.

E. B. Snodgrass and E. L. Robinson, for appellees.

Miller, President:

In a suit in equity and upon attachment begun in the circuit court in April, 1903, by Foster Leap against W. T. Potts, and John F. Loehr and Mary Louise Potts, partners as John F. Loehr & Company, and others, Leap sought among other property attached, to subject to the payment of the indebtedness of said W. T. Potts to him, on certain notes endorsed and paid by said Leap, aggregating about $3,200.00, the undivided interest of Mary Louise Potts, as partner, in a stock of goods and merchandise of said John F. Loehr & Co., at New Martinsville. This suit was shortly afterwards superseded by the bankruptcy proceedings of said W. T. Potts, adjudging him a bankrupt, and in which he was subsequently discharged, and in which the complainant in the present suit was appointed trustee of the bankrupt's estate, and who, by an order entered therein, was authorized to intervene in the Leap suit or bring a new suit against defendants for the protection of the estate of said bankrupt.

The present suit was begun in June, 1903. The bill filed swallows as a whole, and attempts to digest and assimilate to its own purposes the entire bill in the Leap suit; it adopts the charges

therein as its own, and what material averments are added thereto relate, as did the averments in the Leap bill, to alleged transactions of the defendants respecting said property, as effecting the rights and interests of the said Leap.

The answers of defendants put in issue all the material averments of the bill, and upon final hearing thereon, and on the depositions and proofs taken and filed, the circuit court, on April 15, 1907, pronounced the final decree appealed from, adjudging among other things the interest of said Mary Louise Potts in said partnership property to be her property and not liable for the indebtedness of her husband to said Leap, or to his other creditors. The decree also disposed of the issues made with respect to the other property, but the only questions presented for our decision relate to the decree respecting the said stock of goods.

The substantial averments of the bill, are: That in March, 1900, John F. Loehr and W. T. Potts, in the name of his wife, Mary Louise Potts, formed a co-partnership at which time the said Leap had become the accommodation endorser for said Potts to the extent of at least $2,000.00 of said $3,200.00; and that although the partnership agreement purported to be between said Loehr and said M. L. Potts, it was in fact between the said W. T. Potts and said Loehr, and that the terms of the agreement were that Potts was to furnish the capital, and that Loehr, who was experienced in the business to be undertaken, was to give his time and attention to the business, and have a half interest therein; that pursuant to this agreement, W. T. Potts did furnish the capital, aggregating $1,500.00 and no part of which was furnished by said Loehr or by said M. L. Potts; that the business had been prosperous, and that at the time of the suit the firm had accumulated a stock of goods valued at from six to seven thousand dollars. And it is specifically averred that this action of W. T. Potts in thus furnishing the capital for said partnership and so engaging in the business in the name of his wife, was a fraud and done to wrong, cheat and defraud his creditors and especially said Leap.

These averments of the bill in effect charge not only a voluntary gift or transfer by W. T. Potts of his money and property to his wife, and void as against existing creditors because voluntary, but also that such gift or transfer was without consider-

ation and was made with fraudulent intent to cheat and defraud the said Leap, not only as an existing creditor, but as a subsequent creditor of said Potts, and void as against him upon either ground.    But we do not find that it is alleged that defendant M. L. Potts had any notice of such alleged fraudulent intent.

One of the averments of the present bill charged, not as a basis for any relief, but as evidential matter bearing on the question of fraud is, that at the time said W. T. Potts first solicited said Leap to become his endorser, he represented to him that he owned a house and lot in Titusville, Pa., the title to which Leap afterwards learned, but not until he had become such endorser, was in the name of said M. L. Potts, and that the said Potts had designedly had title thereto so placed in the name of his wife about the time or just before he had sought credit from said Leap, with the object in view, in the event he became involved, of having said property beyond the reach of his creditors.    The facts respecting the said house and lot in Titusville disclosed by the evidence are that the same was purchased and paid for in part by the said W. T. Potts in 1894, some three years before said Leap had even become acquainted with him, and, so far as the record shows, before any of his present existing indebtedness had been contracted.    So that the allegations respecting this transaction, not being made the basis of any relief, have very little, if any, evidential force or effect on the issue involved here with respect to said partnership property.

In the final decree appealed from, the court below, upon the papers and evidence in the cause, found as a fact that the said stock of goods of John F. Loehr & Co. was not as charged in the bill the property of said W. T. Potts, and that he had no interest therein subject to the payment of his debts.

The first question presented is, Did Potts invest his own money and capital in the business of said co-partnership in the name of his wife, as a voluntary gift or transfer thereof to her, and void as against Leap or his other existing creditors? and, second, Whether, if not voluntary and void on that ground, was such investment of capital furnished by Potts fraudulent in fact and void for that reason as against said Leap and his other existing or subsequent creditors, and of which Mrs. Potts had notice? In answer to the first question this Court, construing sections 3099 and 3100, Code 1906, has held in numerous cases, that a

voluntary gift or transfer of property, which means a gift, sale or transfer, upon consideration not deemed valuable in law, is void as against existing creditors, because voluntary and not because it is fraudulent, regardless of the "amount of the debts, the extent of the property so conveyed, the motives which prompted the settlement, or the conditions or circumstances of the party at the time;" and as to the second question, that fraud and fraudulent intent charged as against either existing or subsequent creditors must be alleged, and proven substantially as alleged. *Lockhard & Ireland* v. *Beckley*, 10 W. Va. 87; *Greer* v. *O'Brien*, 36 W. Va. 277; *Enslow* v. *Sliger*, 51 W. Va., 405; *Laidley* v. *Reynolds*, 58 W. Va. 418. And where actual fraud is charged it is said in *Greer* v. *O'Brien, supra,* respecting the question of proof that "the rule is that he who alleges fraud must prove it, and the supposed exceptions to this rule are more apparent than real. There must be *prima facie* fraud, or fraud may be proved by a number of concurrent circumstances; nevertheless, so long as the scales are evenly balanced, the defendant, against whom fraud is alleged, must prevail."

The law respecting transactions of this character has been so frequently declared and applied in the decisions of this Court as to render it unnecessary to enter into any new discussion thereof in the case in hand. The facts with respect to the formation of the co-partnership of John F. Loehr & Co., practically uncontradicted are, that the partnership agreement was made between John F. Loehr and Mrs. M. L. Potts, and not between said Loehr and W. T. Potts. Loehr and Mrs. Potts are brother and sister. Of the $1,500.00 cash capital provided by Mrs. Potts at the time, $1,000.00 was obtained by her upon a draft of J. A. Bandi, Cashier of the New Martinsville Bank on the Hanover National Bank of New York City, dated March 17, 1900, payable to the order of W. T. Potts, and endorsed by him and John F. Loehr & Co.; and $500.00, the residue thereof, was provided by Mrs. Potts out of $100.00 paid her by W. T. Potts, in cash, and $400.00, of other cash money furnished by her out of other private funds belonging to her. The evidence of Mr. and Mrs. Potts shows that at the time Potts paid Mrs. Potts this money she held his two notes for money actually loaned him long prior to the incurrence of any of the indebtedness now claimed by said Leap, and so far as the record shows, prior to the

incurrence of any of his present indebtedness, the first dated December 15, 1896, the second dated May 7, 1897, the first calling for $600.00 and the second for $500.00.   These notes were offered in evidence, and both testify in substantial agreement as to the time, places and sources from which Mrs. Potts got this money, and where she had the money on deposit, some of it in the banks at Titusville, Pittsburg and New Martinsville, and some of it she had kept in her possession.   The evidence shows her to have been a careful, close, saving, thrifty and industrious German woman, and a woman of considerable business ability, jealous of her personal interests and always keeping her own property separate and distinct from that of her husband.   She distinctly testifies that some four or five hundred dollars of her own money had been derived from the sale of horses and a buggy at Titusville, derived by her from her mother and cash money given her by her mother.   Both Mr. and Mrs. Potts testify that at the time he paid for her the $1,100.00, she surrendered to him his notes, and he produced and filed the notes with his testimony.   Moreover, it is abundantly proven not only by W. T. Potts, but by other witnesses, including cashiers of the banks, that in March, 1900, after Potts paid this money to said firm and to his wife, and took up his notes, he had a balance of some $2,000.00 left to his credit in the banks at New Martinsville, where he drew the money and purchased the draft, and that for months thereafter, with occasional exceptions, he continued to have large daily balances to his credit in said bank, and besides was the owner of three strings of oil well tools, horses and wagons and other property, aggregating in value from eight to ten thousand dollars.   He was actively engaged in the work of contracting and drilling oil wells, and was apparently very prosperous, and the evidence shows that his financial misfortunes came afterwards, in the purchases of oil production, and in losses upon contracts for drilling wells, due to accidents pertaining thereto, and with which Mrs. Potts, his wife, had nothing whatever to do, and was in no way responsible.   This, with other evidence, we think, wholly fails to show a voluntary gift or transfer by Potts of his property to his wife.   He simply paid her his indebtedness to her, and at a time when he was justified in doing so out of his estate, and that her interest in said co-part-

nership property can not be made assets of said bankrupt to be administered in a court of bankruptcy.

On the second question, was actual fraud proven? It is admitted by Leap, though otherwise charged in his bill, and as proven by Mr. and Mrs. Potts that Leap had notice on the very day the co-partnership was formed that Mrs. Potts and not W. T. Potts was the partner, or at least that she claimed to be; and the testimony of Loehr the other partner shows that his contract of co-partnership was with his sister, Mrs. Potts, and not with Mr. Potts; so that no fraud was practiced upon Leap or on any other creditor so far as the record shows. Nothing was concealed from Leap by Potts or either of the co-partners. Leap assisted in procuring the room in which this firm began business, and with this knowledge, openly communicated to him, he continued to endorse for Potts for large amounts with his eyes wide open to the rights and claims of Mrs. Potts with respect to the partnership property. By his own admissions he knew from Potts that Potts had paid the money into this firm, and he knew from Potts from the beginning, as he admits, that the money Potts proposed to pay into the firm was to be as much in the interest of Loehr the other partner, as in that of Mrs. Potts; yet there was no attempt either in the bill of Leap or in the bill in this cause to charge the interest of Loehr in the partnership property with the payment of the bankrupt's debts. If the partnership property was liable at all for the debts of the bankrupt for anything alleged in the bill, the interest of Loehr was as much liable therefor as the interest of Mrs. Potts and more so, for Mrs. Potts had not only contributed the money paid for her by her husband on his notes but other money, and had given practically all her time to the business, and in addition to the $1,500.00 orignal capital, had actually paid in afterwards some $370.00 additional money. This evidence, with other evidence in the cause we think sufficient to repel all charges of fraud or fraudulent intent as against Leap or any other creditor of said Potts.

Besides all this, the rule of practice announced by this Court in former decisions is, "that although the conclusion reached by the circuit court may be subject to grave doubts this Court will not reverse its action unless plainly erroneous;" and that "a decree of the circuit court determining questions of fact, unless plainly wrong, will not be disturbed." *Shaffer* v. *Shaffer*, 51 W.

Va. 126;. *Wolfe* v. *Bank*, 54 W. Va. 689. See also the many other cases cited in 1 Ency. Dig. of Va. and W. Va. Rep., pp. 619-621 to 623.

Moreover we think that with knowledge of all the facts communicated to Leap by both Mr. and Mrs. Potts in regard to the beginning and continuance of the co-partnership, Leap upon whose rights as creditor this suit is practically made to depend is, upon the principles announced in *Williams* v. *Maxwell*, 45 W. Va. 297, 307, and other cases there cited, estopped from asserting that said W. T. Potts has any interest in said partnership property liable for his debts.

In our judgment the decree below was clearly right and should be affirmed.

*Affirmed.*