M. A. WADDELL, *et al. v.* OREN MCCOMAS, *et al.*

(No. 7288)

Submitted February 7, 1933.    Decided February 14, 1933.

- *W. H. Malcolm,* for appellants.
*Hugh G. Woods,* for appellees.

HATCHER, JUDGE:

In this suit a deed of real estate from a father to a daughter and her husband in consideration of maintenance was set aside as a fraud upon alleged creditors of the father, and the land subjected to the alleged debt.    This appeal followed.

On August 1, 1928, M. A. Waddell, and Lula, his wife, plaintiffs herein, conveyed a town lot to defendant Oren McComas, at the price of $2,500.    No cash was paid, but the grantee and his wife gave their negotiable note to the grantors for $2,500, payable in installments of $25.00 each, the first

to fall due October 1, 1928, and one on the first of each month thereafter, until the principal was paid. This note was indorsed by defendant J. I. McComas and was further secured by a deed of trust on the lot executed contemporaneously by Oren and his wife. The deed of trust (but not the note) contained an acceleration clause, providing that in case of default in the payment of three consecutive installments on the note, then at the election of the Waddells all of the installments should become due, and upon request the trustee should sell the lot. Default was made in the payments (number not shown); the lot was sold by the trustee on July 31, 1930, and was bought in by the Waddells at a price of $1,000. The costs and commissions of the sale reduced that sum to $933, which together with credits (amount not in evidence) theretofore placed on the note, left a balance of principal and interest due on July 31, 1930, of $1,588. The plaintiffs take the position that this balance (as an entirety) was a subsisting obligation of J. I. McComas.

Prior thereto, on April 19, 1930, J. I. and wife had conveyed all of his real estate to defendant, C. L. Smith and Pearl, his wife, in consideration of $1.00 and maintenance of the grantors for life. Pearl Smith is the daughter of J. I. This suit was brought at November Rules, 1930, to set aside that deed and have the real estate subjected to the unpaid balance of $1,588 on the note.

J. I. was not embarrassed in any way financially, much less insolvent in April, 1930. He testified without hint of contradiction that when the deed was executed he was past seventy years of age, was broken down in health and strength, and that the sole purpose of the conveyance was to secure from his daughter the care of himself and wife which they were unable to perform themselves; that he was informed the matter between Oren and the Waddells had been settled (they had conducted negotiations for a settlement); and that he was not cognizant of being indebted to anyone. M. A. Waddell, who handled the affair for plaintiffs, testified that he had never spoken to J. I. about the note. Consequently knowledge of the unpaid installments and fraudulent design in making the deed are disproved.

The defendants would sustain the deed, though a voluntary conveyance, against the rigor of Code, 1923, chapter 74, section 2, on the ground that at the time it was made, J. I. retained enough property to pay the balance claimed by the Waddells. The law in regard to that defense is as follows: "Where, at the time of making a conveyance in consideration of future support, the grantor reserves property which is sufficient to satisfy his existing debts, and which is of such a nature as to be subject to the demands of his creditors, the conveyance is valid, although, for reasons subsequently arising, the creditors later find themselves unable to satisfy their claims from the property reserved." Anno. 2 A. L. R. 1449. This exception to the statute is recognized in our own cases of *Hunter* v. *Hunter,* 10 W. Va. 321, 349; *Hume & Warwick Co.* v. *Condon,* 44 W. Va. 553, 30 S. E. 56; *Metz* v. *Patton,* 63 W. Va. 439, 60 S. E. 399. The value of the property retained by J. I. is controverted. According to the brief for the Waddells, the value of the several tangible items enumerated by J. I. amounted to $1,295 at his own estimation, and to $873 at the estimation of witnesses for the Waddells. Therefore, the brief says, sufficient property was not retained by J. I. to bring his deed within the above exception.

Accelerating the maturity of the purchase price of the lot varied the terms of the note; and foreclosing under the deed of trust increased the risk assumed by J. I. (theoretically at least) in that it took from Oren all inducement to pay further installments. The liability assumed by an accommodation indorser is purely gratuitous; hence courts require that those whom he obliges be scrupulously fair with him, and hold that any dealings between them which prejudice him materially and to which he has not assented, ordinarily release him from further responsibility. Brandt, Suretyship and Guaranty (3d Ed.) secs. 416, 439. However, the record does not develope that theory, nor is it necessary for us to appraise the theory closely as this situation is so patently controlled by another rule.

There was no acceleration clause in the note indorsed by J. I.; the note did not refer to the deed of trust; he was not a party to the deed of trust: so the two instruments were not integrated as far as he was concerned. No evidence tends to

show that he even knew of the clause. Since he never agreed to, ratified, or knew of the clause, we see no grounds whatever for subjecting him to it. There are two lines of decisions (each claiming ''the weight of authority'') concerning the effect upon a note of an accelerating clause in a mortgage concurrent with the note and given to secure it. One line holds that such a clause advances the maturity of the note for all purposes. The other line limits the acceleration to the mortgage foreclosure, and holds that the maturity of the note is not otherwise affected. See Brannan's Neg. Inst. Law (5th Ed.), 143-4; 8 C. J., subject Bills and Notes, sec. 330; annotation 34 A. L. R., 850 and 857. This Court has followed the second line. *Morton* v. *Coal Co.*, 91 W. Va. 169, 177-8-9, 112 S. E. 396; *Southern Co. v. Lopinsky*, 93 W. Va. 214, 116 S. E. 253. See also the leading cases of *Owings* v. *McKenzie*, 133 Mo. 323, 33 S. W. 802; and *Baird* v. *Meyer*, 55 N. D. 930, 215 N. W. 542. Research has disclosed no case applying the first-line rule against an accommodation indorser, when the note made no reference to the mortgage. *McClelland* v. *Bishop*, 42 Ohio St. 113 (a second-line case), is express authority against such application, holding: ''For the purpose of demand and notice to charge indorsers, such notes are to be deemed due according to their terms, irrespective of such stipulation in the mortgage.'' So the note alone must be looked to for the obligation of J. I., and therein he promised merely to pay the $2,500 in monthly installments of $25.00 in case of Oren's default. His liability on April 19, 1930, (the date of his deed to the Smiths) was limited to the monthly installments then in default, which could not have amounted to more than $475.00. If he retained in his possession tangible personal property of the value of $873.00 as estimated by plaintiffs' own witnesses, he had property ''largely more than sufficient'' to pay all the installments then due on the note, and the deed to the Smiths was not in fraud of the accrued rights of the plaintiffs. See *Hume-Warwick Co.* v. *Condon, supra.* Moreover, by virtue of the credit placed on the note, July 1, 1930, of $933.00 (the net price of the lot at the trustee's sale), the $475.00 in default on April 1, 1930, was liquidated and payment of the installments for the next eighteen months following April, 1930, was anticipated. Even if J. I. were not en-

tirely discharged from his obligation by the foreclosure, there were no unpaid installments on the balance of the note which were due from him in November, 1930, when this suit was brought, and the plaintiffs had no right to maintain it.

The decree of the lower court is accordingly reversed and the bill dismissed.

*Reversed; bill dismissed.*