# CHARLESTON.

SOUTHERN BILLIARD SUPPLY CO. *v.* E. H. LOPINSKY *et al.*

Submitted January 30, 1923.   Decided February 27, 1923.

1. SALES—*Measure of Damages for Defective Goods Where Warranted Stated.*

     Where in an action for the balance of the purchase price of certain pool tables and equipment, accepted by the buyer, defense is made that they were inferior in quality to that warranted, the true measure of damages is the difference between their value with the defects warranted against and the value they would have borne without such defects.   (p. 219).

2. CHATTEL MORTGAGES—*Notes Under Accelerating Provision Held to Become Due Upon Default of Interest for Purpose of Enforcing Mortgage Security.*

     Notes secured by a mortgage containing the following accelerating provision: "And in case default be made in the payment of the debt above mentioned, or any part thereof, or of the interest due thereon, on any day when the same ought to be paid, then the whole sum shall at the election of said mortgagee, its successors or assigns, become immediately due and payable;" upon any such default become due for the purpose of enforcing the mortgage.   (p. 219).

3. SAME—*Notes Not Matured by Terms Will Not Become Due on Default in Payment of Note at Maturity for Purpose of Obtaining Judgment; Accelerating Provision in Mortgage Confined to Enforcement of its Terms, and Has no Relation to Enforcement Under Ordinary Methods.*

     However, where the notes secured by such mortgage con-

tain no accelerating provision, but do contain a reference for identification, such as, "This note is secured by chattel mortgage," the notes not matured by their terms will not become due upon default in payment of a note at maturity for the purpose of obtaining judgment thereon; under such circumstances the accelerating provision in the mortgage is confined solely to the enforcement of the terms of the mortgage and has no relation to the enforcement of payment in the ordinary methods provided by law.  (p. 219).

4.  APPEAL AND ERROR—*Appellate Court Will Enter Judgment for Notes Due at Commencement of Action Where Jury Treated All Notes Due.*

Where action has been brought upon such notes, part of which are due and part not due according to their terms, but all have become due under the accelerating provision of the mortgage by which they are secured, and under instructions of the court the jury, for purposes of the action, treats them all as being due, renders a verdict for the full amount of all of said notes, upon which judgment is entered and defendant obtains a writ of error, this Court, upon offer of the plaintiff to remit so much of the judgment as covers the notes not due when the action was instituted, will enter judgment here for the amount of the notes due when the action was instituted, with interest thereon from the date of the verdict, reserving to plaintiff his right to collect the remaining notes as they mature.  (p. 219).

Error to Circuit Court, McDowell County.

Action by the Southern Billiard Supply Company against E. H. Lopinsky and others.  From a judgment for plaintiff, defendants bring error.

*Modified and Affirmed.*

*Strother, Sale, Curd & Tucker,* for plaintiffs in error.
*Sanders, Crockett & Fox,* for defendant in error.

MEREDITH, JUDGE:

Plaintiffs, by way of notice of motion for judgment, brought an action against the defendants for the recovery of the principal and interest on nineteen certain notes, which resulted in verdict and judgment against defendants, on March 13, 1922, of $3354.91 and costs.  Defendants obtained a writ of error.

The notice was served upon defendants E. H. Lopinsky and I. Michaelson on January 20th, 1922; they and S. Weber and Harry Morse, partners under the firm name of Welch Billiard Parlor and Welch Pool Parlor, were named as defendants. The last two persons were not found.

Defendants Lopinsky and Michaelson appeared and filed their plea of non-assumpsit and also two special pleas, one denying the partnership and the other pleading a breach of warranty of quality in the personal property sold, and for which the notes in suit were executed.

From the record it appears that the defendant E. H. Lopinsky is the owner of a building located in Welch in one portion of which is located a poolroom. On October 8th, 1920, while he was getting this room ready, preparatory to the installation of the pool tables therein, he entered into negotiations with plaintiffs, through F. H. Todd, one of the plaintiff partners, for the purpose of buying the pool tables and equipment, and which negotiations ultimately resulted in the purchase of eleven pool tables and equipment, which were later installed in the premises. Plaintiff Todd also testifies that at that time Lopinsky told him that he was a member of the purchasing firm, but did not give him the names of the other partners. It appears that then, when the deal was closed, the defendant Lopinsky entered into a written contract with plaintiffs for the purchase of the tables and equipment at the price of $5500.00, the defendant signing the contract, "Welch Billiard Parlor, by S. Weber". The tables were shipped promptly but the room was not ready for their installation. Todd later came on to install the tables, but the room was not then ready. About that time, on November 15th, 1920, the notes in suit were executed. At the time the original contract was signed, Lopinsky paid in cash $200.00. The notes were signed, "Welch Pool Parlor, by Harry Morse, Mgr.", and are made payable to plaintiffs' order. They were also secured by a mortgage on the tables and equipment, executed in the same form as the notes, tho this mortgage appears to be dated December 18th, 1920.

Subsequently, and before the tables were installed, $1300 additional was paid in cash; the two cash payments, aggre-

gating $1500, and the notes making the total sum of $5500.00. The building was not ready for occupancy until about April 1st, 1921, when Todd came on to set up the tables.  From the time of their arrival at Welch until they were set up they had been stored in the billard room, a period of some four months or over, and were exposed to dampness during a portion of this time for the reason that the front of the room was open. The tables were installed and have been used by the defendants or some of them ever since.

In all, there were twenty-four notes executed,—the first twenty-three notes for $166.00 each, and the last note for $182.00; aggregating in all $4000.00.  Under the terms of the contract the first note was to be payable in one month from the date the goods and property were delivered and installed, but the defendants not being ready to have the property installed upon delivery, all the notes bear date of November 15th, 1920, and were made payable, respectively, one each month thereafter with interest from date.  Of the twenty-four notes executed, the defendants, or some of them, paid the first five, but refused to pay the others as they matured alleging that the tables and equipment were defective and did not conform to the warranty, viz: that they were to be equal or superior to pool tables and equipment furnished by the Brunswick-Balke-Collender Company.

At the time of the institution of this action there were only nine of the notes in suit then due, under their terms; but there is this provision in the mortgage by which they are secured:  "And in case default be made in the payment of the debt above mentioned, or any part thereof, or of the interest due thereon, on any day when the same ought to be paid, then the whole sum shall at the election of said mortgagee, its successors or assigns, become immediately due and payable".   There is included in the judgment the amount of the notes not due, as well as the amount of the notes conceded to be due by their terms; but plaintiffs claim that under our decisions of *Oliver* v. *Stovall,* decided at this present term and *Morton* v. *Rock Bottom Coal Company,* 91 W. Va. 169, 112 S. E. 396, they are entitled to present judg-

ment upon all of the notes. This is controverted by the defendants.

Defendants assign twenty-four errors, which may be recast and group as follows:

(1)   That there is no proof that defendants are partners.

(2)   That there was a breach of warranty of quality in the goods purchased.

(3)   That the court erred in the admission and rejection of certain evidence.

(4)   That the court erred in giving certain instructions for plaintiff, and in refusing instructions offered by defendants.

(5)   That no recovery should be had for the notes not due by their terms.

We think there is ample evidence in the case showing that the defendants were partners. Todd testifies that when the contract of purchase was made, Lopinsky told him that he was a member of the firm. Lopinsky signed the firm name to the contract, but instead of signing the firm name by his own, he signed it by the name of ''S. Weber''. Todd says he did not at that time notice the name signed to the contract. Lopinsky says he was merely acting for his friend Michaelson, who was purchasing the property, and that Weber was to be the manager; that Weber came on to take charge, but finding that the room would not be ready in time, he left, and Morse was secured as manager and he executed the notes and mortgage. How long Morse stayed does not appear and Weber and he were not summoned, the action was dismissed as to them and proceeded in to final judgment against Lopinsky and Michaelson. Neither Morse nor Weber appeared as witnesses. Michaelson swears that the business was his, the contract, mortgage and notes were all executed for him, and him alone. But the evidence clearly discloses that Michaelson's name was not mentioned during all the negotiations. Lopinsky executed the contract for the firm, made the cash payment of $200.00; if he did not actually make the second cash payment of $1300.00, he was responsible for it, or saw that it was made; and his letter of March 22d,

1921, addressed to plaintiffs, in which he states as an excuse for the non-payment of plaintiffs' draft that, "The Bank did not know they could charge the draft to my account, so they returned same," stating also that the Billiard Parlor had no account in the bank; this, with various admissions in his testimony, the fact that he alone conducted the negotiations, and that Todd testified that he said he was a member of the firm, fully warranted the jury in resolving that question against him.

Under the evidence the jury was also justified in finding that there was no breach of warranty in the quality of the goods. Plaintiffs' witnesses testify that the tables and equipment were equal, if not superior, to the tables and equipment furnished by the Brunswick-Balke-Collender Company; defendants' witnesses testify otherwise. That matter was settled by the verdict.

Under the third group of errors assigned, defendants complain that the court refused to permit them to show loss of profits to the business because the tables and equipment were not as good as tables and equipment furnished by the Brunswick-Balke-Collender Company, and in use by competing poolrooms. The court, however, did permit them to go fully into the question of warranty of the quality of the goods, but properly rejected evidence of loss of profits because the evidence was uncertain; in fact, the damages claimed were wholly speculative and conjectural. *Milling Co.* v. *Milling Co.*, 78 W. Va. 314, 88 S. E. 1079; *Douglas* v. *Ohio River R. R. Co.*, 51 W. Va. 523, 41 S. E. 911; *Hare* v. *Parkersburg*, 24 W. Va. 554; *James & Mitchell* v. *Adams*, 8 W. Va. 568. The court was willing to permit defendants to show how much less the goods were worth when delivered than what they would have been had they conformed to the contract, but defendants confined their evidence in that respect to their value to Michaelson. He testified they were worth nothing to him but not what their market value was, except that he had offer of $550 for the eleven tables. There was no error in the rejection of this evidence. . If the goods delivered were inferior in quality to the goods purchased,

the true measure of damages, where the buyer accepts the goods, was the difference between the value of the goods with the ·defects warranted against, and what their value would have been had they had no such defects. *Thornton* v. *Thompson,* 4 Gratt. 121; *Eastern Ice Co.* v. *King,* 86 Va. 97; 103 S. E. 506.

As to the instructions: The instruction given for plaintiffs telling the jury that the burden of proving damages was upon defendants, is inaptly drawn but we do not think the jury was misled by it. The following instruction was given by the court over the objection of both parties:

> "The court instructs the jury that if they should believe from the evidence that Lopinsky and Michaelson were partners in the purchase of the property in question, then they will find for the plaintiff as against Lopinsky and Michaelson as partners the amount shown by the plaintiff to be due it upon the notes introduced in evidence, with interest thereon, the amount being $3,354.91, provided the jury believe that the property sold and for which the notes were given came up to the warranty, but if the jury should believe that the property did not comply with the warranty, then the jury are to fix the value of the property at the time it was delivered from the evidence in the case, and if that value is less than the price agreed to be paid then the jury are told to deduct that price they fixed on the property from the purchase price, and that will give the amount actually due to the plaintiff as of this time".

It is clearly inaccurate. It wholly ignores the payments that had been made; but it is evident from the verdict that the jury paid no attention to it. The criticism directed against it by defendants' counsel is that there was no evidence that Lopinsky and Michaelson were partners. We view it otherwise. Lopinsky practically admits he was a member of the firm. In reply to a question as to why he wrote plaintiffs the letter of March 22nd, 1921, heretofore referred to, he answers: "The reason I wrote this letter, I felt I didn't want to be in a partnership in any deal unless it was right". With that letter he enclosed his check for

the draft that had been returned unpaid, and directed plaintiffs in the future to attach draft to each note drawn on him personally as he would personally guarantee the notes.   As the jury clearly was not misled by the instruction respecting the partnership, in that respect there is no error.   However, it was error to instruct the jury that all the notes were due.   There is no accelerating clause in the notes.   That clause is in the mortgage.   The notes contain the following provision:   "This note is secured by chattel mortgage;" but that alone is not sufficient to render the notes due before maturity under their terms, because of default in payment of any of the notes as they matured.   As was held in *Morton* v. *Rock Bottom Coal Co.* and *Oliver* v. *Stovall, supra,* for purposes of enforcing the trust or mortgage, non-payment of any note when due by its terms would render them all due; but not for the purpose of obtaining judgment thereon.   The jury therefore had no right to include in its ·verdict the amount of the notes and interest thereon not due according to their very terms.   This eliminates all notes not due on January 20, 1922, that being the time action was instituted. The nine notes in suit then due, with the interest to date of verdict, and protest fees, deducting therefrom the sum of $60 for certain chairs which were not shipped, amount to $1549.46.   This should have been the amount of the verdict. This is the sum due when action was brought, with interest to March 13, 1922, the date of the verdict.   The notice to defendants does not show when it was received by the sheriff, but it was served January 20, 1922.   For the purposes of our calculation, we assume that action was instituted when service was had.   Plaintiffs ask that we reduce the judgment here to the sum that should have been found due by the jury and save their right to proceed against defendants for the remaining notes, which have since matured, thus avoiding the expense and annoyance off a new trial on the questions of partnership and breach of warranty.   In the furtherance of justice this ought to be done.   It can be done under our decisions.   *Millan* v. *Bartlett*, 78 W. Va. 367, and cases there cited.

We will therefore reverse the judgment; and plaintiffs being willing to remit from the amount of the verdict that portion covering the notes and interest not due at the time this action was brought, will enter judgment here for the sum of $1549.46, with interest thereon from March 13, 1922, the date of the verdict; with right reserved to plaintiffs to proceed in such manner as they deem proper to enforce payment of the notes not due at the commencement of this action, but defendants will be allowed costs on their prosecution of this writ of error.

*Modified and Affirmed.*