# CHARLESTON.

DEN THOMPSON v. DAVIS COLLIERY COMPANY

(No. 5807)

Submitted November 15, 1927.   Decided November 22, 1927.

NEW TRIAL—*Where Legal Part of Excessive Verdict is Not Ascertainable Without Assuming Jury's Functions, Verdict Should be Set Aside and New Trial Awarded.*

> Where the verdict and judgment is plainly in excess of the amount the plaintiff is entitled to recover according to his own evidence proper to be considered, and the illegal part of the verdict is not clearly ascertainable by the court without assuming the functions of the jury and substituting its judgment for theirs, the verdict should be set aside and a new trial awarded.
>
> (New Trial, 29 Cyc. p. 1021.)
>
> (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Gilmer County.

Two suits by Den Thompson against the Davis Colliery Company, begun in a justice court and appealed to the Circuit Court, where they were tried as one suit. Judgment for plaintiff, and defendant brings error.

*Reversed; new trial.*

*C. M. Bennett* and *B. W. Craddock,* for plaintiff in error.
*R. F. Kidd,* for defendant in error.

LIVELY, JUDGE:

Den Thompson, plaintiff below and defendant here, instituted two suits against defendant, Davis Colliery Company, before a justice of the peace, which suits were appealed to the circuit court and there tried by agreement as one suit, resulting in a verdict and judgment for plaintiff, for the sum of $395.00, from which judgment the coal company obtained this writ of error; and here assigns error that the evidence is not sufficient to sustain the verdict, and that the court refused

to permit it to file, as a part of the evidence, a recapitulation of bimonthly statements theretofore furnished plaintiff and introduced in evidence.

Thompson's first suit was begun before the magistrate on September 28, 1925, in which he sought recovery for ''money due on contract, damages for wrong'' for the sum of $200.00. The other action was instituted on November 24, 1925, for money due on contract for $300.00. No appearance was made by defendant before the justice, and they were appealed as above stated. Plaintiff is a miner, and had been working for defendant for several years. It appears that on July 1, 1925, he was employed to dig coal on a tonnage basis at seventy cents per ton delivered at the side track, and that he employed various laborers to increase the tonnage. He also says that he was to have seventy-five cents an hour for every hour worked by him individually in the mine, whatever the work may have been. This contract continued, according to his evidence, until the time the first suit was instituted, and immediately thereafter he was employed in the mine by defendant at seventy-five cents an hour for an eight-hour day.

There is considerable conflict in the evidence to the effect that whenever Thompson did a character of work, which was regulated by a scale of wages, at which the other workmen performed their labor, he was to be paid according to the scale. But in considering the motion to set aside the verdict, and in considering the evidence here, we will discard all of defendant's verbal evidence which is in conflict with that of the plaintiff. Such is the rule. Under the first contract claimed by Thompson he rendered to the company a statement of the tonnage dug by each one of his employees working on his contract at seventy cents per ton, and also the time which he worked in the mine. From these statements furnished to the timekeeper by him, the defendant issued to Thompson semi-monthly statements showing the amount to which he was entitled and debited him with what he owed for merchandise, rent, fuel, medical service and the like. These statements furnished the basis of the first suit, and it is upon them that Thompson seeks recovery in that suit, asserting that they do not give him sufficient credit for certain items

therein named.    He does not question the debits for merchan-
dise, fuel, medical service and the like, except in one in-
stance, he says that seventy-five feet of rubber hose charged
to him at $15.00, should have been $7.00 only.    Taking these
statements as the basis of his claim, he points out that in the
semi-monthly statement of July 15, 1925, he was credited
with 1419.60 tons of coal for the digging of which he should
have had ten cents on each ton more than he received on the
statement; and on the July 31, 1925, statement he was allowed
1254.80 tons loaded by him and his men, on which he did not
receive enough by ten cents on the ton; and on the August
15, 1925, statement he was allowed 506.85 tons on which he
did not receive ten cents to which he was entitled under his
contract, but in that statement he was allowed five cents
more than he was entitled to on 206.55 tons, amounting to
$10.32.    He explains the reason why he did not receive this
ten cents per ton, to which he was entitled on the tonnage
above named, in this way:    He says that he had contracted
to pay his laborers forty cents per ton for the coal loaded by
them, thereby making a profit to himself of thirty cents on
each ton, the defendant having agreed to pay him seventy
cents per ton; but that afterwards defendant increased the
wages of his men ten cents per ton, paying them fifty cents
per ton, thereby depriving him of ten cents per ton under his
contract.    There is considerable evidence on behalf of de-
fendant in direct conflict with Thompson's claim in this
regard, but discarding that evidence from consideration, and
taking Thompson's statement as true, we find that on July 15,
1925, statement he was short at ten cents per ton $141.96;
on July 31, 1925, statement he was short on the same basis
$125.48, and on the August 15, 1925, statement he was short
$50.68; from which an admitted item of five cents overpaid
on 206.55 tons amounting to $10.32 should be credited, leav-
ing him short on that statement $40.36.    He does not question
the amount of tonnage reported.    He had reported the ton-
nage himself and could not well question it.    According to
his evidence there was owing to him by reason of the increase
and payment thereof of the wages of his men of ten cents per
ton, the sum of $307.80, being the total of the sums above

mentioned in the three statements to which he says he was entitled, by reason of the increase and payment to his men. It appears that in a later statement he was allowed a credit of $65.22 by reason of an increase of two cents per ton made by defendant to the miners working for him. He does not question that he was credited this $65.22, which taken from the $307.80 leaves him short, according to his own evidence, $242.58, in this contract for delivering coal at seventy cents per ton.

His other claim is based on the fact that he was to be paid seventy-five cents per hour for all labor done by him and that in some instances defendant allowed him less than the stipulated compensation, and these specific instances are pointed out in the statements of July 15th, August 15th, September 16th, September 30th and October 15th. Taking his own statement for these shortages and giving him seventy-five cents per hour, he would be entitled to recover on this account, $26.90. These two sums, one for $242.59 for shortage on coal loadings, and the other $26.90 for labor personally performed, is all that he has proven to be due him under his contract, discarding defendant's evidence in toto. His counsel, in the brief, figures up the amount of his claims for shortage in payment for coal as $302.92. How can we account for the difference between these amounts proven (taking the strongest view that can be had of plaintiff's evidence), and the amount of the verdict $395.80? Thompson's counsel seeks to account for it in this way: He asked Thompson what was due him from defendant at the time he instituted the first suit, and Thompson's answer was that according to a calculation made by him he was entitled to a recovery of $200.00 at that time. Then plaintiff was asked what amount was due him when he instituted the second suit about the 24th day of November, 1925, and he replied that according to a calculation made by him at that time, defendant owed to him $300.00. It is from this evidence that counsel argues that the verdict should stand; that plaintiff has shown he was entitled to $500.00, and the jury was warranted in cutting his claim down to $395.80. When asked upon cross examination on what he based his calculation of $200.00 due at the time he

instituted the first suit, and $300.00 at the time he instituted the second suit, Thompson could not give any other basis than the semi-monthly statements furnished him and which were in evidence on the trial.    These were the statements which he said embraced incorrect items pointed out by him as incorrect, and which at the farthest makes his claim not to exceed $269.48 ($242.58 plus $26.90).    This general statement of Thompson's that he had made a calculation and arrived at the two sums respectively, $200.00 and $300.00, is not evidence on which to substantiate a recovery.    It was a mere conclusion for which he furnishes no different basis than that relied upon; on the contrary his own evidence at the trial showed that if he did make such calculation it was incorrect.    The jury was not instructed; and what effect this general statement may have had upon the verdict is beyond venture of a guess.

It is clear that the verdict is excessive under the evidence, and should have been set aside upon motion.    If the court could have ascertained from the evidence the exact amount of the excessiveness by the application of a settled rule of law applicable to the evidence, it should have required the plaintiff to release that excess upon penalty of having the verdict set aside and a new trial awarded.    Plaintiff was not put on terms of that character.    Indeed it would be very difficult for the court to have ascertained exactly the amount of excess under this evidence.    So, in remanding the cause for new trial, we do not feel disposed to direct the court to put the plaintiff upon terms.    Such direction has been frequently given.    *Buena Vista Co.* v. *McCandlish,* 92 Va. 297; *Gibson* v. *Governor,* 11 Leigh 600.    See also *Unfried* v. *Baltimore, etc., R. Co.,* 34 W. Va. 260.

On the other assignment of error, namely, that a recapitulation of the accounts between the parties from July 1, 1925, to November 11, 1925, showing every debit and credit as claimed by the defendant, should have been permitted to go to the jury, we cannot see that there was reversible error therein. The recapitulated statement tendered is not made a part of the record and we do not know what it contains.    Presumably as its name implies, it would be a repetition, or summary of the bimonthly statements which were in evidence.    It might

have been more complete in form, but so far as we can see, the facts and results deducible by calculation would be unchanged. On the other hand we can see no objection to the filing of such· recapitulation, because in the first place it would be of assistance to both court and jury, and in the second place such a statement was demanded by the plaintiff at the beginning of the trial.

Because the verdict and judgment is in excess of the amount legally proven by plaintiff, the judgment will be reversed, the verdict set .aside, and the cause remanded for new trial.

*Reversed; new trial.*