EARL T. BROWDER, *Incorporated*

*v.*

THE COUNTY COURT OF WEBSTER COUNTY,

WEST VIRGINIA, *a Corporation*

(No. 10898)

Submitted January 14, 1958. Decided March 25, 1958.

*E. V. Morton, Jr., Wysong & Wysong,* for plaintiff in error.

*Brooks Callaghan, Pettigrew, Samms & Pettigrew, S. L. Flournoy,* for defendant in error.

DUCKER, JUDGE:

Earl T. Browder, Inc., a corporation, brought this action of assumpsit against the County Court of Webster County, West Virginia, in the Circuit Court of said County, for the recovery of money claimed as due and owing to the plaintiff under a contract between the parties for the construction by the plaintiff of the Webster County Memorial Hospital, and for other work and services in addition thereto, upon the trial of which cause the jury returned a verdict in favor of the plaintiff for $30,-000.00, and it is to the judgment of the Circuit Court for plaintiff for that amount that this writ of error is prosecuted by the County Court as plaintiff in error. In this opinion the defendant in error will be referred to as the plaintiff and the plaintiff in error as the defendant.

The plaintiff, a building contractor and the successful low bidder, was awarded a contract for the erection of the hospital at a total base contract price of $365,617.00, and a formal written contract containing the provisions, plans and specifications was entered into between the parties, and work thereunder was begun in the spring of 1951. With regularly made and unquestioned change orders an additional $39,295.90 was added to the contract price, thereby increasing the total contract price to $404,-912.90. The balance due, according to defendant's contention, was paid to the plaintiff on November 12, 1952, but the amount paid did not cover the plaintiff's claim (1) that it is entitled to additional compensation in the amount of $60,714.13, plus interest, to cover the cost of solid rock excavation as "unclassified excavation" under a provision of the contract specifying the price of $15.00 per cubic yard which plaintiff claimed was not covered by the charge made for the excavation of clay, loose stone and hard clay, (2) an additional sum of

$22,426.93, plus interest, for the excavation and removal of dirt and rock situate immediately to the rear of the hospital building and also not covered by the original formal contract, and (3) an additional sum of $1,566.91, plus interest, to cover the cost of hauling and storing of certain hospital furniture and equipment which was also not provided for or covered in the original contract, said three additional amounts claimed by the plaintiff in this action totaling $84,707.97, plus interest, from the dates of the invoices for such work. Formal demand with itemized statement as required by law was made by the plaintiff upon the defendant before the institution of this suit.

These claims are made in the declaration, both under the common counts in assumpsit and special counts, and legal liability therefor is denied by the defendant in its demurrer and special pleas, the plaintiff claiming the $60,714.13 under the terms of the written contract, the $22,426.93 and $1,566.91 under oral agreements and on *quantum meruit* or *quantum valebant*. The defendant defends on the basis of alleged invalidity of the first item because the contract was not modified by any change order and because there was no submission of the claim to arbitration as provided for in contract, and the second and third items, and also the first, as not being legal obligations of the County Court because not authorized or approved by formal and recorded court action.

There is no dispute as to, or any alleged dissatisfaction with, the physical performance of the work done by the plaintiff. The completed hospital was formally accepted by the County Court from the contractor on October 13, 1952. The plaintiff, before receiving the final payment covered by a check dated November 12, 1952, which check recited that it was for "balance due contract" wrote to the defendant, with a copy of the letter to defendant's architect, that plaintiff had incurred additional expense on account of rock excavation in the amount of $31,671.70, and that as "there was a difference of opinion concerning this additional expense item", plaintiff de-

sired the submission of the question to arbitration in accordance with the provisions of the contract, and further that "the check which was understood to be in the mail could not be treated by plaintiff as final payment". Defendant's architect acknowledged receipt of the plaintiff's letter but defendant denied ever having received it. A later offer by plaintiff to defendant to arbitrate was made in June, 1955, and refused by defendant on the basis that it was too late under the terms of the contract.

There is testimony to the effect that trips were made by the plaintiff to Webster Springs and that various conversations were had between Earl T. Browder, president of plaintiff corporation, D. V. Cutlip, president of the County Court, and the architect, but nothing further was done about the first proposal to arbitrate or in regard to any additional payment. Although the final statements rendered by plaintiff to defendant before the institution of this suit were for the items of $60,714.13, $22,426.93 and $1,566.91, to which were added interest charges to date, and the first two were recited to have been based on invoices of the plaintiff dated November 21, 1952, the letter of the plaintiff to defendant dated November 12, 1952, recited only the item of $31,671.70 as being the additional expense item on which arbitration was requested. The item of $1,566.91, being a charge back against plaintiff or deduction from the original amount admittedly due plaintiff and not having been discovered by plaintiff until the check was received by plaintiff, is understandable as not being in the mind of the plaintiff when plaintiff's letter of November 12th was written, but the figures of $31,671.70 do not correspond with either the $60,714.13 or the $22,426.93 items of the plaintiff's claim, but from the wording of the letter to the effect that the additional compensation is for "additional unforseen expenses involved in completing the excavation, grading and all earth handling and moving in the above property, inasmuch as we encountered a rock condition instead of dirt and clay, as indicated upon the plans submitted to us for our bid in the first

instance", it is apparent that this amount of $31,671.70 was for the work done for which the defendant was later invoiced in the amount of $60,714.13. While this discrepancy in the amount of the claim did not itself preclude the plaintiff from claiming that the invoice figures are correct, it nevertheless made some factual issue on the question which may have been taken into consideration by the jury.

The basis of plaintiff's claim represented by the item of $60,714.13 is, as has been indicated, that the test holes which defendant had had drilled for the determination of the structure of the earth to be excavated showed hard clay and not rock, and that plaintiff had the right to rely upon that representation, but that if it did not have such right then it was protected by the provision in the contract which specified that the excavation of rock came within the "unclassified excavation" and was to be paid for at the rate of $15.00 per cubic yard plus other necessary incidental costs.

The basis of the plaintiff's claim represented by the item of $22,426.93 is that this is for the additional work done in the excavating and removing of the rock cliff near and to the rear of the hospital building so as to provide entrance way and parking space to the rear of the hospital and that work was done by the plaintiff at the request of the president of the County Court and with the knowledge of the other members of the Court and the architect, but without any formal County Court order or contract authorizing or approving such work. This item, with interest thereon from the date of the invoice, namely November 21, 1952, until the date of the verdict on September 29, 1956, would total approximately $27,600.00.

The basis of plaintiff's claim for $1,566.91 is for work outside the contract for moving and installing hospital equipment which the president of the County Court requested plaintiff to do because it was necessary to move the equipment from the railroad station and put it in

the hospital. This item of plaintiff's claim was first paid for by the defendant and then upon a later payment to the plaintiff deducted from the balance which defendant admitted was due. The purported reason given by the defendant for such deduction was that the seller of the equipment, who was not the plaintiff, had agreed to cover such costs. This item, with interest from October 20, 1952, until the date of the verdict, amounted to approximately $1,925.00. The two items of plaintiff's claim relating to excavation in the rear and the handling of the hospital equipment, both with interest, amount to approximately $29,500.00. As the verdict was in excess of this latter amount, the jury must of necessity have considered, to some extent at least, the plaintiff's $60,714.13, (described in its letter of November 12, 1952 as $31,-617.70) on account of rock excavation under the contract.

The defendant as the plaintiff in error here has assigned as error in the trial almost every action taken or order entered and every instruction given or refused, but this Court considers those not herein discussed as not prejudicial to defendant and as not requiring any detailed discussion here, as the decision in this case depends upon and is controlled by the facts and law hereinafter discussed.

The defendant contends that, regardless of all other claims of non-liability on its part, the plaintiff was required to first demand arbitration of any claims in dispute and to proceed with the contract requirements in that regard for a determination of the disputed questions before it could maintain this suit. The plaintiff claims that by its letter of November 12, 1952, when it learned that the defendant had mailed its last check to plaintiff, it demanded arbitration as to its claim for compensation for the rock excavation within the area of the hospital construction and that such demand was ignored by defendant. Where by the terms of a contract the parties have agreed to arbitrate and that such is a condition precedent to the right of either party to sue, the

parties must comply therewith. *Lawson v. Williamson Coal & Coke Co.*, 61 W. Va. 669, 57 S. E. 258; *Pettus et al. v. Olga Coal Company*, 137 W. Va. 492, 72 S. E. 2d 881, and cases cited therein. Such provision does not deprive the courts of jurisdiction to enforce an award. *Kinney v. Balt. & Ohio Relief Asso.*, 35 W. Va. 385, 14 S. E. 8, 9; *Turner v. Stewart*, 51 W. Va. 493, 41 S. E. 924; *Hughes v. National Fuel Company*, 121 W. Va. 392, 3 S. E. 2d 621. But here the defendant ignored, which, in our opinion, amounted to a refusal of the plaintiff's demand for arbitration. When the dispute arose as to this question and the defendant was expressly apprised of such fact by letter admittedly received by defendant's agent, the architect, it was as much the duty of the defendant as it was of the plaintiff to require the arbitration, and its neglect or refusal to do so affords no just basis for a later assertion that plaintiff is now barred from maintaining this action. We are of the opinion that the defendant has waived its right to require arbitration in this instance and that such waiver cannot be used to the detriment of the plaintiff, and that, therefore, the contention of defendant in this respect is not well founded. *Pettus v. Olga Coal Company, supra.*

As to the demand for arbitration made in June, 1955, the defendant's refusal based on the theory that the same had not been timely made was proper, but in view of our conclusion as to the other demand, it is, consequently, of no importance.

The next most pertinent questions presented in this case are those otherwise relating to the validity of the plaintiff's claims, which we will now consider specifically.

As to plaintiff's claim of $60,714.13 for rock excavation within the confines of the hospital building location, the plaintiff relies upon the fact that the test holes set out in the plans showed that the material to be excavated was at the most hard clay, but that when plaintiff performed the work it proved to be rock, and, being such, plaintiff was entitled to $15.00 per cubic yard under the terms of the contract which fixed such price for "un-

classified excavation". This is the item as to which plaintiff demanded arbitration but which was not arbitrated, and which was first referred to in a letter as amounting to $31,670.70, and later stated in the invoice and formal claim in the larger amount. As this discrepancy was in evidence before the jury, and the verdict did not exceed even the smaller amount, it is not material to the questions now presented. Contracts of this nature are intended to be fair and mutual in the respective obligations of the parties, and even though the test hole data as to underlying earth strata was, we may assume, an unintentional and misleading provision, it is only reasonable to conclude that it must have been the express purpose of such contractual provision to cover just such a situation as developed here and was for the purpose of avoiding the taking of any unfair advantage of the contractor. The offer or demand of the contractor to arbitrate the matter tends to evince the latter's good faith. It is true that there is considerable evidence as to the quantity and sizes of rock claimed in this item by the plaintiff to have been excavated, and that was a jury question, but as the verdict was a general verdict without any designation as to items, we may assume that the jury found that this item came within the terms of the written and duly authorized contract between the parties, and we consider such finding as proper and valid.

As to plaintiff's claim of $22,426.93 for the additional work done in the excavating and removal of the rock cliff near and to the rear of the hospital building, the evidence shows that this was done at the direction of the county court president and within the knowledge of the other court members, although it was not within the plans and specifications of the original hospital construction contract. Nor was there any order for the work entered of record by the county court or any formal contract therefor entered into by the parties. It is clear there could be no recovery by the plaintiff on the basis of there being a valid and legally binding contract because of the requirements of the provisions of Sec-

tion 5, Article 1 of Chapter 7 of the Code of West Virginia, which requires all proceedings of a county court to be entered in the record books of such court.

But plaintiff relies not only upon the foregoing basis but also upon the basis that plaintiff did the work with the full knowledge of the members of the county court, who requested it to do the work for the benefit of the county, and the county having received the benefit thereof and being unable to make restitution to the plaintiff of the benefits received, cannot be thus unjustly enriched at the expense of the plaintiff, and in support of such basis of plaintiff's claim the plaintiff relies upon the decisions of this Court in *Goshorn's Ex'rs.* v. *County Court,* 42 W. Va. 735, 26 S. E. 452 and *Engineering Co.* v. *County Court,* 92 W. Va. 368, 115 S. E. 462.

In the *Goshorn* case payment was sought for hogs which were used and consumed at the poor farm without authorization by formal order of the county court, and this Court held in point 4, syllabus:

> "The county court, not being able, without its fault, to return the same hogs, was liable to pay what they were reasonably worth, viz. the fair market value at the time and place of delivery, with such incidental sums added as were necessary to make the sellers whole."

And from the opinion in that case it appears the decision is based upon the theory of unjust enrichment and a resulting implied contract permitting the plaintiff to recover in assumpsit on a count of *quantum valebant,* and that the county court is estopped to plead lack of formal authorization or ratification.

And there was a similar holding in the case of *Engineering Co.* v. *County Court, supra,* in which recovery was permitted upon a claim for compensation for additional work performed, although the same was not specifically covered by contract or authorized by an order of the county court. In that case it appears that after the excavation for the footers of bridge piers had been done

to the depth specified in the contract plans, it was found necessary because of the condition of the strata to excavate deeper to reach a solid base upon which to rest the piers, and upon this condition being brought to the attention of the president of the county court, he verbally authorized the work. And that decision, according to the opinion, is based upon like reasoning as the *Goshorn* case, except that in the *Engineering Co.* case there was a formal original contract and the arising of necessitous circumstances which developed within the process of performance of the contract, a situation which could have justified plaintiff in refusing to further proceed without additional compensation. Without such additional work great loss to the county would have ensued by reason of the failure to complete the bridge under contract.

There is much force to the contention that these two cases establish the principle that a county court is liable upon any claim for personal property or services rendered without formal county court orders either authorizing or ratifying a purchase or agreement where the court has received the benefit thereof, and restitution cannot be made, and there is much strength to the view of requiring anyone, individual or corporate, to pay the fair market value therefor and not to be unjustly enriched by obtaining such property or services without cost, and, without language in the opinions in those two cases limiting or modifying the rule therein laid down, the trial court in this case had support for his rulings herein. This poses the question of how far such doctrine may be applicable in this case, when considered with the extent it may be limited by the legal restrictions placed upon county courts in the performance of their duties. Proper consideration must be given to the interest of the public whose money is spent to obtain property and services for the public weal, and that consideration is no less important than the matter of the justness of claims of individuals dealing in an unauthorized manner with the county courts or their members. Civil or criminal liability of the members of county courts is not a wholly satis-

factory remedy for or insurance against the liability imposed upon counties by reason of unlawful acts of the members of such courts, even if perchance an individual member of the public is damaged by such unlawful act, and even though it would seem dishonest to leave such individual so damaged without compensation for his loss. Article VIII, Section 24 of the Constitution of West Virginia, after granting in detail specific powers to the county courts, also provided:

> "Such courts may exercise such other powers, and perform such other duties, not of a judicial nature, as may be prescribed by law."

And as has been heretofore noted, county courts are by Section 5, Article 1 of Chapter 7 of the Code of West Virginia required to enter of record all their proceedings.

Thus, it is seen, that a county court's jurisdiction and its power are granted and limited by the constitution and the laws enacted thereunder, and it is not subject to the broad principles upon which liability may be imposed upon individuals.

As appears from point 5, syllabus, of the *Goshorn* case:

> "The county court is a corporation created by statute, and can only do such things as are authorized by law, and in the mode prescribed."

So the requirements of the statute and the decision that county courts must enter of record its orders for the expenditure of the funds must not be construed as meaningless, but must be enforced for the benefit of the whole public and not for the benefit of any particular individual who may suffer on account of a mistaken reliance upon invalid acts of individual officers, however unfortunate, harmful or deceptive any such acts may have been, unless there is a predominant reason not to do so. To extend the doctrine of liability in every instance because of unjust enrichment is to open the door to all such claims as have not been properly authorized. While we are not disposed to overrule the *Goshorn* and *Engineering Co.*

cases, we do not consider the principles laid down in those cases as decisive of this case because of the difference in the factual situation presented here. However, we do modify the rule laid down therein and restrict the application of the principle of those cases, so that the public will not be at the mercy of a president or other member of a county court who by his individual acts or omissions, or by his acquiescence, might subject the county to liability, not even to the extent of the fair market value for material, labor or services which might be bought or received for the benefit of the county without a proper order authorizing or ratifying such obligation. Too often is it apparent that the expenditures first authorized under a contract are enlarged by so-called "extras" without proper authorization, either intentionally or otherwise, and any such practice should certainly not be given judicial sanction. Nor should sloven management of county affairs be approved. In the absence of special reason, based on competent evidence, why the paramount consideration inherent in the legislative act requiring formal orders by county courts should not be made effective, there should be no digression therefrom as to its enforcement. Because we see special reasons in the *Goshorn* and *Engineering Co.* cases for the decisions rendered therein, we consider the holdings in those cases as precedents only for such future cases as will have sufficient facts to justify the rule enunciated in those two cases, and all cases of similar import should be scrutinized closely to determine whether there is such an overriding equity as will justify the imposition of liability on the county court.

The work and services rendered by the plaintiff in the excavation of the rock cliff outside of the area of the land for which the plaintiff claims $22,426.93, with interest, may amount to an unjust enrichment by the county, because it is impossible to make restitution of the services other than compensation therefor, but such services were not a necessary part of or indispensable to the original contract for the construction of the hospital. We do not consider the factual situation here as showing sufficient

reason to hold that it was unnecessary to have formal authorization by the county court, and we consider this item of plaintiff's claim invalid.

The plaintiff's claim of $1,566.91, with interest, for services rendered in connection with the hospital equipment, an item not covered by the contract, was allowed by an order of the county court on October 31, 1952, and payment was made by check to the plaintiff for that amount. Although there is some evidence in regard to possible recoupment of this amount by the county court from the sellers of the equipment, and partial success in so doing, the contention of the defendant that this item of plaintiff's claim is invalid is not well taken in view of the actual entry by the county court of the order authorizing the payment. The legality of having authorized it and paid it to the plaintiff is not to be destroyed by a subsequent repudiation of the first order, and the cancellation of the authorized and effected payment is not a good reason for withholding that amount from the amount due on the last estimate paid by defendant to plaintiff under the principal contract. So we consider the question of the validity of this item of plaintiff's claims as properly determinable by the jury.

And finally, the defendant asserts that the plaintiff is precluded from maintaining its action on these claims because the last check issued by defendant, received and deposited by plaintiff, for plaintiff's services under the contract contained the words "balance due contract". As heretofore shown, the plaintiff in its letter of November 12, 1952, before receiving the check, advised defendant that it would not so consider the check as payment in full. We cannot agree with defendant's contention in this respect, as the law on this point is well settled that under such circumstances plaintiff is not so barred. *Nixon* v. *Kiddy,* 66 W. Va. 355, 358, 66 S. E. 500; *Kohlsaat* v. *Coal Co.,* 90 W. Va. 656, 671, 112 S. E. 213; *DuPont* v. *Supply Co.,* 119 W. Va. 645, 647, 195 S. E. 596; *Clark* v. *Sperry,* 125 W. Va. 718, 25 S. E. 2d 870; *Kasco Mills* v. *Ferebee,* 197 Va. 589, 90 S. E. 2d 866.

The court permitted the plaintiff to prove, by evidence deemed by the court admissible, all three items claimed, including the item of $22,426.93, for the work done in excavation of the rock cliff at the rear of the hospital, and such evidence was considered by the jury in its deliberation, and a general verdict in the sum of $30,000.00 for the plaintiff was returned. What verdict would have been rendered had evidence of the $22,426.93 claim been excluded, we are unable to say, and such being the case, it is presumed to have been prejudicial and should have been excluded. *Foundry Co.* v. *Steel and Iron Co.*, 58 W. Va. 62, 51 S. E. 129; *Pittsonberger* v. *Andrews,* 112 W. Va. 651, 166 S. E. 367.

The cross assignments of error made by plaintiff are, we think, disposed of by the foregoing conclusions.

For the reasons stated, we are of the opinion that the judgment of the Circuit Court of Webster County should be reversed, the verdict of the jury set aside, a new trial awarded, and the case remanded for further proceedings not inconsistent with the decision herein, and we so hold.

*Reversed; verdict set aside;*
*new trial awarded; case remanded.*