EARL T. BROWDER, *Inc.*

*v.*

THE COUNTY COURT OF WEBSTER COUNTY

(No. 12016)

Submitted September 20, 1960. Decided November 15, 1960.

*S. L. Flournoy, Roy S. Samms, Jr., Brooks Callaghan,* for plaintiff in error.

*Wysong & Wysong, Ernest V. Morton, Jr.,* for defendant in error.

CALHOUN, JUDGE:

This action of assumpsit arose in connection with a written contract by the terms of which Earl T. Browder, Inc., agreed to build a hospital for The County Court of Webster County. The case is before this Court on writ of error to the final judgment of the Circuit Court of Webster County, embodied in an order entered therein on May 27, 1959, by which the trial court set aside a verdict for $27,219.18 in favor of Earl T. Browder, Inc., the plaintiff, against The County Court of Webster County, the defendant.

Previously in the same case, upon writ of error prosecuted by the defendant, this Court set aside a verdict for $30,000 in favor of the plaintiff and granted the defendant a new trial. *Earl T. Browder, Inc. v. The County Court of Webster County,* 143 W. Va. 406, 102 S. E. 2d 425. Because of the detailed statement of pertinent facts in the previous opinion, the facts will be stated herein to a limited extent only.

The former opinion discloses that the plaintiff's claim was originally composed of three items: (1) A claim of $22,426.93 for certain excavating done by the plaintiff at the rear of the hospital. This item was disallowed by this Court, because it represented a claim of compensation for work which was not within the

purview of the written building contract, plans and specifications, and because such "extra" work was not formally authorized by the county court. This portion of the original claim accordingly has been abandoned by the plaintiff and was not asserted at the second trial. (2) An item of $1,566.91, plus interest, representing a charge for hauling and storing certain hospital furniture and equipment. It is now conceded by the defendant that the county court formally authorized payment of this item and that it is proper. (3) The sum of $36,871.04, representing the cost of removing 2,458 5/72 cubic yards of rock, referred to in the former opinion and in the record of the second trial as "unclassified excavation", at $15 per cubic yard. Inasmuch as the first of the three items as listed above has been held previously by this Court to be improper, and was not asserted at the second trial, and inasmuch as the second item of $1,566.91 is now recognized by the defendant to be correct and proper, there remains for our consideration at this time only the third item, representing a claim for the removal of 2,458 5/72 cubic yards of rock or "unclassified excavation", at $15 per cubic yard, amounting to the sum of $36,871.04.

The plaintiff at the trial claimed interest on both the item of $1,566.91 and the item of $36,871.04 from November 12, 1952, that being the date of a letter from the plaintiff making formal demand upon the defendant for payment. Apparently no question was raised at the trial relative to the propriety of interest. Plaintiff's Instruction No. 4, which was read to the jury, authorized the jury to include such interest in its verdict and no objection was urged to that feature of the instruction. See Code, 56-6-27; *Morton v. Cabot,* 134 W. Va. 55, 63 S. E. 2d 861; *Bischoff v. Francesca,* 133 W. Va. 474, 56 S. E. 2d 865. In response to two special interrogatories, the jury found that rock was actually excavated by the plaintiff, and that the amount thereof was 1,229 cubic yards or a total yardage almost exactly one-half of that claimed by the plaintiff.

The base contract price for the construction of the hospital was $365.617. The specifications provided that

the defendant was authorized to "make changes in the drawings and specifications of this contract" with proper adjustments of the contract price, resulting from such changes. "Change orders" of this nature were made so as to add $39,295.90 to the contract price. These "change order" items and the base contract price have been fully paid.

On November 12, 1952, the defendant mailed to the plaintiff a check for $56,348.91, bearing the notation "Balance due Contract." While such check was being transmitted by mail and before the plaintiff received it, the plaintiff directed a letter to the defendant stating that "it is expressly understood that such check can not be treated by us as a final and complete payment in the premises, but we reserve the full right of enforcement and collection of our additional claim". The prior opinion discloses that this Court held that the fact that the plaintiff accepted and deposited this check with such notation appearing thereon did not preclude the plaintiff from asserting the balance of its claim. At the second trial there was no controversy concerning the propriety of this check and no question concerning the charge thereby paid. It could have served only to confuse or prejudice the jurors and, therefore, the trial court properly refused to admit it as evidence proper for the jury's consideration.

The specifications which formed the basis of the bidding contained the following language: "The general contractor shall write on the bottom of the bid form the cost of unclassified excavation." The plaintiff's bid on the prescribed form contained the following language: "Unclassified excavation $15.00 C.Y." It is clear that the abbreviation "C. Y." means cubic yard. The difference between "classified excavation" and "unclassified excavation" appears clearly from the testimony. Earl T. Browder stated the distinction succinctly as follows: "Classified is what is called for on the plans and unclassified is anything else that might be excavated." See 12 Am. Jur., Contracts, Section 324, page 878.

Preparatory to the making of the plans and specifications, and in order to facilitate bidding in the customary manner, "test holes" were drilled in the area to be excavated in connection with the construction of the hospital. In relation thereto Earl T. Browder testified as follows: "It is protection for both the owner and the contractor. No one can tell us what is under that ground by examining it from the surface or walking *cross* it. The test holes set forth what they think is down there. We are able to base our bid on what is shown by the test holes and knowing if we have to go deeper and hit something else our unclassified bid is what we get. Without that clause, the contractor gambles. It is one of the fairest things we have." These test holes, according to the plans, disclosed topsoil, loose stone and hard clay beneath the surface in the area to be excavated. Earl T. Browder testified that when he encountered "rock" in connection with the excavating, he called the fact to the attention of the members of the county court and its architect. W. L. Workman, the building superintendent, employed by the plaintiff, defined "loose stone" as something which "could be handled with a shovel or by hand", and he defined "rock" as something "that has to be handled with heavy equipment in order to move it or break it up."

The testimony discloses indisputably that the plaintiff encountered "rock" in connection with the excavation involved in the construction of the hospital, though the amount thereof is a matter of controversy. W. L. Workman, the construction superintendent, testified that he kept day to day field notes which disclosed the amount and dimensions of the rocks removed to the extent stated in the plaintiff's claim. Various witnesses for the defendant testified to rocks of considerable size and number. Kenney Hosey, a witness for the defendant, testified that one of such rocks was as large as an automobile. These questions of fact, dependent upon conflicting testimony and credibility of witnesses, were properly submitted to the jury for determination, and we can not say the finding of the jury in relation thereto was unwarranted.

After the jury returned its verdict for the plaintiff in the sum of $27,219.18, the defendant moved the court to set aside the verdict and grant the defendant a new trial upon grounds assigned in writing and entered of record. Thereafter the trial judge directed a letter to counsel for the respective parties which expressed his opinion that the verdict was excessive in amount, and that the jury must have "had some misconception of the evidence or its legal effect" in arriving at such verdict. The letter concluded as follows: "Unless the plaintiff files a remittitur reducing the verdict to the sum of $10,000.00 the Court will set aside the verdict of the jury." The trial judge made a statement, which is included in the record, in which he undertook to explain the intent and purpose of his letter. He stated, in effect, that previously he had discussed the matter with the prosecuting attorney, who stated that he would recommend to the defendant that it take no exception to the action of the court in permitting the remittitur to be filed. The trial judge stated further that it was his opinion that $10,000 would be ample compensation to the plaintiff; and that he was merely endeavoring to be "gracious toward the plaintiff" in giving the plaintiff the option to reduce the verdict to $10,000 rather than to have it set aside in its entirety.

The term "remittitur" is defined as follows in an article by Leo Carlin, who until his retirement was for many years an eminent and respected member of the faculty of the College of Law, West Virginia University: "The remittitur * * *, in its broadest sense, is the procedural process by which the verdict of a jury is diminished by subtraction. * * * The term is used to describe generally any reduction made by the court without the consent of the jury; but the typical situation in which it is employed, * * * is where, on a motion by a defendant for a new trial, the verdict is considered excessive and the plaintiff is given an election to remit a portion of the amount or submit to a new trial." "Remittiturs and Additurs", 49 W. Va. Law Q. 1. In the same article at page 29, Professor Carlin states: "The

West Virginia decisions have consistently adhered to the minority rule, the court refusing to allow a remittitur where the amount of damages recoverable is measurable by no definite standard and the amount of the excess is equally indeterminable."

The soundness of the minority rule has been questioned in earlier opinions of this Court. *Ohio River R. Co. v. Blake,* 38 W. Va. 718, 724, 18 S. E. 957, 960; *Watts v. Ohio Valley Electric Ry.,* 78 W. Va. 144, 150, 88 S. E. 659, 661. The remittitur may be employed where the amount of the excess is definitely ascertainable. *Bragg v. Whitten Transfer Co.,* 125 W. Va. 722, 26 S. E. 2d 217; *O'Dell v. Criss & Shaver,* 123 W. Va. 290, 14 S. E. 2d 767; *McCallam v. Hope Natural Gas Co.,* 93 W. Va. 426, 117 S. E. 148; *Southern Billiard Supply Co. v. Lopinsky,* 93 W. Va. 214, 116 S. E. 253; *Taylor v. Sturm Lumber Co.,* 90 W. Va. 530, 111 S. E. 481; *Chapman v. Beltz & Sons Co.,* 48 W. Va. 1, 35 S. E. 1013; and *Ohio River Co. v. Blake,* 38 W. Va. 718, 18 S. E. 957. See also 13 M. J., New Trials, Section 57, page 696; 66 C.J.S., New Trial, Section 209 (3), page 522. But the Court has consistently held, on the other hand, that when there are no data before the court by which the amount of the excess may be definitely ascertained, a remittitur is not proper. *Vinal v. Core and Compton,* 18 W. Va. 1; *Unfried v. B. & O. Railroad Co.,* 34 W. Va. 260, 12 S. E. 512; *Rodgers v. Bailey,* 68 W. Va. 186, 69 S. E. 698; *Hall v. The Philadelphia Co.,* 74 W. Va. 172, 81 S. E. 727; *Clark v. Lee,* 76 W. Va. 144, 85 S. E. 64; *Lutz v. City of Charleston,* 76 W. Va. 657, 86 S. E. 561; *Flanagan v. Flanagan Coal Co.,* 77 W. Va. 757, 88 S. E. 397; *Watts v. Ohio Valley Electric Co.,* 78 W. Va. 144, 88 S. E. 659; *Cox & Co. v. Carter Coal Co.,* 81 W. Va. 555, 94 S. E. 956; *Thompson v. Davis Colliery Co.,* 104 W. Va. 493, 140 S. E. 489; and *Larzo v. Swift,* 129 W. Va. 436, 40 S. E. 2d 811. In the case now under consideration the amount which the plaintiff is entitled to recover is dependent upon the conflicting testimony and the credibility of witnesses on the question of the number of cubic yards of rock removed in connection

with the necessary excavation. Under such circumstances it can not be said that the verdict is excessive in a definitely ascertainable amount and, therefore, the plaintiff could not be required to elect to submit to a remittitur or to a new trial. To the extent that the trial court undertook to compel such election, it was in error in the light of the prior decisions of this court.

"Where, in the trial of an action at law before a jury, the evidence is conflicting, it is the province of the jury to resolve the conflict, and its verdict thereon will not be disturbed unless . believed to be plainly wrong." *French v. Sinkford,* 132 W. Va. 66, pt. 2 syl., 54 S. E. 2d 38. See also *Morris v. City of Wheeling,* 140 W. Va. 78, 82 S. E. 2d 536. In any case in which the damages or the compensation to which the plaintiff is entitled to recover are indeterminate in character, the verdict of the jury will not be set aside as excessive unless it is not supported by the evidence or is so large that it indicates that the jury was influenced by passion, partiality, prejudice or corruption, or entertained a mistaken view of the case. *Tennessee Gas Transmission Co. v. Fox,* 134 W. Va. 106, 58 S. E. 2d 584; *Bailey v. DeBoyd,* 135 W. Va. 730, 65 S. E. 2d 82. Where the damages or compensation which the plaintiff is entitled to recover are indeterminate in character, mere difference of opinion between the trial judge and the jury will not justify the court in setting aside the verdict. *Ward v. Raleigh County Park Board,* 143 W. Va. 931, 105 S. E. 2d 881; *Bailey v. DeBoyd,* 135 W. Va. 730, 65 S. E. 2d 82; *Tennessee Gas Transmission Co. v. Fox,* 134 W. Va. 106, 58 S. E. 2d 584; *Yuncke v. Welker,* 128 W. Va. 299, 36 S. E. 2d 410; *Vest v. Chesapeake & O. Ry. Co.,* 117 W. Va. 457, 187 S. E. 358. Inasmuch as the amount of the verdict in this case turned upon conflicting testimony and the credibility of witnesses, there being nothing to justify a conclusion that the jury was actuated by improper motives or a mistaken view of the case, neither the trial court nor this Court is warranted in setting aside such verdict because of excessiveness.

While it does not appear that the action of the trial court in setting aside the verdict was based on any ground other than the excessiveness in the amount of the verdict, no prejudicial error is perceived in relation to other grounds of error urged on behalf of the defendant. In its former opinion the Court disposed of a defense contention in relation to arbitration. In relation to defendant's contention that the rock excavation should be governed by the "change order" provisions of the contract rather than by the provisions dealing with "unclassified excavation", the Court stated: "Contracts of this nature are intended to be fair and mutual in the respective obligations of the parties, and even though the test hole data as to underlying earth strata was, we may assume, an unintentional and misleading provision, it is only reasonable to conclude that it must have been the express purpose of such contractual provision to cover just such a situation as developed here, and was for the purpose of avoiding the taking of any unfair advantage of the contractor. The offer or demand of the contractor to arbitrate the matter tends to evince the latter's good faith. It is true that there is considerable evidence as to the quantity and sizes of rock claimed in this item by the plaintiff to have been excavated, and that was a jury question, * * *." *Earl T. Browder, Inc. v. The County Court of Webster County,* 143 W. Va. 406, 413, 102 S. E. 2d 425, 430.

On behalf of the defendant it is urged that the court erred in refusing an instruction offered by the defendant which stated that any judgment rendered against the defendant "must be paid by the funds arising from the collection of the taxes assessed against the taxpayers of the County." It is urged that the court likewise erred in refusing to permit one of counsel for the defendant to make a similar statement in his argument before the jury. When such statement was made by counsel in his argument before the jury the court, upon objection in behalf of the plaintiff, expressed the opinion that such statement constituted argument con-

trary to the instructions and in that connection orally instructed the jury that: "* * * the County Court in this case is the defendant and any verdict returned here will be paid by the County Court of Webster County and you will disregard the statement that the taxpayers will have to pay any verdict returned here." Such argument could have served no useful purpose, but it was of such nature that it might have had a tendency to inflame or prejudice the jury. Rule VI, Rules of Practice for Trial Courts (116 W. Va. lxii) contains the following language: "* * * Counsel may not argue against the correctness of any instruction * * * nor contend before the jury for any theory of the case that has been overruled." As has been stated herein, the court had previously refused an instruction containing language of like import. The trial court acted with complete propriety and committed no error in this respect.

Instruction No. 2, which was offered in behalf of the defendant and refused by the court, contained the following language: "* * * that it is the duty of every juror to consider all the evidence in the case, the instructions of the Court, the argument of counsel, and the argument of his fellow jurors. That no juror should give up or surrender his own opinion simply because other jurors are of a different opinion; and that no juror believing that the plaintiff has not proved its case by a preponderance of all of the evidence should join in a verdict against the defendant." The trial court committed no error in refusing to grant this instruction. *Riddle v. B. & O. Railroad Co.,* 137 W. Va. 733, 73 S. E. 2d 793, 34 A.L.R. 2d 1228; *State v. Taft,* 144. W. Va. 704, 110 S. E. 2d 727.

We have considered carefully each contention made in behalf of the defendant, but are, nevertheless, of the opinion that the trial court erred in setting aside the verdict and in awarding the defendant a new trial.

For the reasons stated herein, the judgment of the Circuit Court of Webster County is reversed, the verdict of the jury is reinstated, and judgment for the

plaintiff on such verdict is rendered in this Court. Code, 58-5-25. See also *The City of McMechen ex rel. Willey v. Fidelity and Casualty Co. of New York, et al.,* decided at this term of Court, 145 W. Va. 660, 116 S. E. 2d 388; and *Ward v. Raleigh County Park Board,* 143 W. Va. 931, 105 S. E. 2d 881.

*Judgment reversed;*
*verdict for plaintiff reinstated;*
*judgment entered by this court.*